No. 14-1952

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

PEDRO LOPEZ, et al.
Plaintiffs-Appellants
v.
CITY OF LAWRENCE, et al.
Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
DISTRICT COURT NO. 07-11693-GAO
(HON. GEORGE A. O'TOOLE, JR.)

_____

BRIEF OF AMICI CURIAE INTERNATIONAL MUNICIPAL
LAWYERS ASSOCIATION, MASSACHUSETTS MUNICIPAL
LAWYERS ASSOCIATION, MASSACHUSETTS MUNICIPAL
ASSOCIATION, NATIONAL PUBLIC EMPLOYER LABOR
RELATIONS ASSOCIATION, MASSACHUSETTS CHIEFS
OF POLICE ASSOCIATION, INC., AND FIRE CHIEFS
ASSOCIATION OF MASSACHUSETTS, INC. IN SUPPORT OF
DEFENDANTS-APPELLEES AND AFFIRMANCE OF THE JUDGMENT

Christopher J. Petrini (C.A.B. 1136164)
cpetrini@petrinilaw.com
Christopher L. Brown (C.A.B. 1170459)
cbrown@petrinilaw.com
Petrini & Associates, P.C.
372 Union Avenue
Framingham, MA 01702
Phone:  (508) 665-4310
Fax:  (508) 665-4313

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Fed. R. App. P., *amici curiae* herein state that they are neither publicly held corporations nor do they have parent corporations that are publicly held.  No publicly held corporation owns 10% or more of their stock.

# TABLE OF CONTENTS

Table of Contents…………………………………………………………i

Table of Authorities………………………………………………………ii

Statement of Interest……………………………………..………………vi

Statement of Amici Curiae Pursuant to Rule 29(B)(5)……...…………….............xi

I.  Summary of Argument………………………………………….………..1

II. Argument……………………………………………….………..2

    A.    Overview of the Massachusetts Civil Service System……………..2

    B.    Delegation of Authority Under the Massachusetts Civil
           Service System……………………………………………….........9

    C.    It is Both Impractical and Inequitable to Place Responsibility
           for the Statewide Civil Service Examination on Individual
           Communities…………………………………………..……....10

    D.    The Lower Court Correctly Decided that Individual
           Community Statistics Should Not Be Aggregated Under
           the Circumstances…………………………………………22

    E.    A Reversal and/or Remand of the Trial Court's Decision
           Could Call into Question the Legitimacy of Past and Future
           Promotions, Impair the Orderly Replenishment of Chains of
           Command and Potentially Jeopardize Public Safety...…………23

    F.    The Potential Impacts of a Reversal and Remand on
           other State Civil Service Systems in the United States………… 25

III. Conclusion.…………………………………………………..26

Certificate of Compliance with Rule 32(A)…………………………………28

# <u>TABLE OF AUTHORITIES</u>

## I.    Cases

Boston Chapter, NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974),
    *aff'd*, 504 F.2d 1017 (1st Cir. 1974)……………………………………………..21

Bradley v. City of Lynn, 403 F. Supp. 2d 161 (D. Mass. 2005)……………......15

Camacho v. Puerto Rico Ports Auth., 369 F.3d 570 (1st Cir. 2004) …………….16

Cambridge v. Civil Serv. Comm'n, 43 Mass. App. Ct. 300, 682 N.E.2d 923 (Mass.
    App. Ct. 1997)…………………………………………………………………..2

Castro v. Beecher, 334 F. Supp. 930 (D. Mass. 1971), *aff'd in part, rev'd in part*,
    459 F.2d 725 (1st Cir. 1972), as further amended by 365 F. Supp. 655 (D. Mass.
    1973) and 386 F. Supp. 1281 (D. Mass. 1975)……………………………...21

Chief Justice for Admin. and Mgt. of the Trial Court and Natl. Assoc. of Govt.
    Employees, Labor Relations Commission Case No. SUP-05-5207 (CERB, April
    30, 2008)……………………………………………………………………….20

Department of Transp. v. Public Citizen, 541 U.S. 752 (2004)………………..16

Franks v. Bowman Transp. Co., 424 U.S. 747 (1976)………………………….15

Lopez v. Commonwealth, 463 Mass. 696, 978 N.E.2d 67 (Mass. 2012)…………11

Lopez v. Massachusetts, 588 F.3d 69 (1st Cir. 2009)…………………………..1,11

Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass.
    256, 748 N.E.2d 455 (Mass. 2001)……………………………………………13

Massachusetts Elec. Co. v. Massachusetts Commn. Against Discrimination, 375
    Mass. 160, 375 N.E.2d 1192 (1978)…………………………………………...15

Natl. Lab. Relations Bd. v. Katz, 369 U.S. 736 (1962)…………………………..20

Nixon v. Missouri Municipal League, 541 U.S. 125 (2004)……………………...17

Paige v. California, 291 F.3d 1141 (9th Cir. 2002)…………………………....22,23

Police Dept. of Boston v. Kavaleski, 463 Mass. 680, 978 N.E.2d 55 (Mass. 2012)……………………………………………………………………8

Quinn v. City of Boston, 325 F.3d 18 (1st Cir. 2003)…………………...13,14,15

Ricci v. DeStefano, 557 U.S. 557 (2009)………………………………...14,15

School Committee of Newton v. Labor Relations Commn., 388 Mass. 557, 447 N.E.2d 1201 (Mass. 1983)……………………………………………..20

Vulcan Pioneers, Inc. v. New Jersey Dep't of Civil Serv., 625 F. Supp. 527 (D.N.J. 1985)………………………………………………………..22,23

## II.    Statutes

Cal. Govt. Code §§ 18930-18941………………………………………………25

Mass. Gen. Laws ch. 31, § 1……………………………………………..4,9,14

Mass. Gen. Laws ch. 31, § 3……………………………………………...5,8

Mass. Gen. Laws ch. 31, § 5……………………………………….......5,6

Mass. Gen. Laws ch. 31, § 6B…………………………………………...8

Mass. Gen. Laws ch. 31, § 10…………………………………………….9

Mass. Gen. Laws ch. 31, § 16…………………………………………5,6

Mass. Gen. Laws ch. 31, § 51 ………………………………………… ..5

Mass. Gen. Laws ch. 31, § 52………………………………………………5

Mass. Gen. Laws ch. 31, § 54………………………………………………5

Mass. Gen. Laws ch. 31, § 55………………………………………………5

Mass. Gen. Laws ch. 31, § 59…………………………………………...9,13

Mass. Gen. Laws ch. 40, § 4A…………………………………………….19

Mass. Gen. Laws ch. 150E, § 6…………………………………………...19

Mass. Gen. Laws ch. 150E, § 10………………………………………19,20

Mass. Gen. Laws ch. 150E, § 11…………………………………………………….20

Mass. Gen. Laws ch. 151B, § 4…………………………………………………...11

N.Y. CVS Laws § 52……………………………………………………………...25

Tex. Local Govt. Code § 143.032………………………………………………...25

Wash. Rev. Code § 41.08.040…………………………………………………….25

## III.    Other Authorities

Developments in the Law, *Public Employment*, 97 HARV. L. REV. 1611
(1984)………………………………………………………………………...3

Executive Office of Administration and Finance, *Assessment Centers – Use in
Civil Service Promotions*, www.mass.gov……………………………………9

Executive Office of Administration and Finance, *Personnel Administration Rules*,
www.mass.gov……………………………………………………………6,7

Executive Office of Administration and Finance, *Police Departments Covered by
Civil Service*, www.mass.gov…………………………………….5,14,17

Executive Office of Administration and Finance, *Regional Assessment Center
Initiative*, www.mass.gov………………………………………………18,19

Executive Office of Administration and Finance, *Sample Weighted Graded
Delegation Agreement*, www.mass.gov………………………………………10

Executive Office of Administration and Finance, *What is Civil Service*,
www.mass.gov……………………………………………………………4,5

JONATHAN WALTERS, PIONEER INSTITUTE FOR PUBLIC POLICY RESEARCH, TOWARD
A HIGH PERFORMANCE WORKPLACE:  FIXING CIVIL SERVICE IN MASSACHUSETTS
(2000)………………………………………………………………………...3

LEAGUE OF WOMEN VOTERS OF MASS., THE MERIT SYSTEM IN MASSACHUSETTS:  A
STUDY OF PUBLIC PERSONNEL ADMINISTRATION IN THE COMMONWEALTH
(1961)………………………………………………………………………...4

iv

Town of Canton, *2015 Annual Town Meeting Warrant*,
    town.canton.ma.us…………………………………………………………..17

## STATEMENT OF INTEREST

The amici on the instant brief are a group of national and state organizations dedicated to the interests of municipal government.  This case concerns alleged discriminatory impact that by definition is <u>unintentional</u> in nature.  The amici and their constituent interests are dedicated to the cause of equal opportunity in the municipal work force, which has substantial benefits for municipal organizations as a whole and the delivery of efficient and effective services to the public.  The amici respectfully request the Court in this case to carefully weigh the potential dangers and practical negative consequences that will likely result if the statewide civil service system is called into question or upended.

The Massachusetts civil service system, which is set forth and authorized under M.G.L. Chapter 31, associated rules and regulations and interpretative case law, is relied upon as a source of eligible appointees for original and promotional appointments for police departments in 162 cities and towns throughout Massachusetts, not just the six defendant-appellee communities involved in this case.  The vast majority of these communities cannot, without severe negative budgetary impacts, financially or administratively take on the role of creating and administering the selection process that the Commonwealth's Human Resources Division and its predecessors historically have performed.  The practical effect of a reversal or remand of the lower court judgment would be to unfairly vest

responsibility for remedying the alleged disparate impact of a statewide examination upon individual communities that did not create or administer this examination and are ill-equipped to craft an acceptable alternative.   Beyond the negative impacts, flux and uncertainty that reversal of the lower court will cause the Massachusetts civil service system and its participating communities, the amici are filing this amicus curiae brief because the issues currently before this Court potentially will have a nationwide negative impact on public sector hiring and promotion in other jurisdictions nationally, and/or could  leave public sector employers under the purview of the First Circuit (particularly employers who routinely use statewide tests) in a less favorable position than employers throughout the rest of the country as it relates to the use of statewide testing, the validity of such testing, the manner of selection from  hiring and promotional  lists, and the availability of alternative selection methods.

The individual amici are as follows:

The Massachusetts Municipal Lawyers Association ("MMLA"), formerly known as the City Solicitors and Town Counsel Association, is the oldest and largest bar association dedicated to the practice of municipal law in the Commonwealth of Massachusetts.  The members of the MMLA include attorneys and their assistants who represent municipal governments as city solicitor, town counsel, town attorney, or corporation counsel.  Members of the MMLA also

include attorneys who represent or advise cities, towns, and other governmental agencies in other capacities. MMLA's mission is to promote better local government through the advancement of municipal law.

The International Municipal Lawyers Association ("IMLA") is a non-profit, nonpartisan professional organization consisting of more than 2500 members. The membership is comprised of local government entities, including cities, counties and subdivisions thereof, as represented by their chief legal officers, state municipal leagues, and individual attorneys. IMLA serves as an international clearinghouse of legal information and cooperation on municipal legal matters. Established in 1935, IMLA is the oldest and largest association of attorneys representing United States municipalities, counties and special districts. IMLA's mission is to advance the responsible development of municipal law through education and advocacy by providing the collective viewpoint of local governments around the country on legal issues before the United States Supreme Court, the United States Courts of Appeals, and in state supreme and appellate courts.

The National Public Employer Labor Relations Association ("NPELRA") is a not-for-profit corporation established in 1970. The purpose of NPELRA is to represent public sector and not-for-profit entities and practitioners of labor and employee relations employed by them. NPELRA and its members function as

fiduciaries to the interests of the citizens, in part, by advocating the development of sound local, state and national policy relative to hiring, compensation, benefits, and employee/labor management relations.

The Massachusetts Municipal Association ("MMA") is a nonprofit, nonpartisan statewide association of 347 member cities and towns.  The MMA provides advocacy, training, publications, research, and other services to its members.  The MMA is governed by a Board of Directors composed of mayors, selectmen, managers, councilors, and Finance Committee members from across Massachusetts.  It brings municipal officials together to establish unified policies, to advocate these policies, and to share information that increases the efficiency and cost effectiveness of service delivery to community residents.

The Massachusetts Chiefs of Police Association, Inc. ("MCOPA") is a non-profit corporation whose members are municipal police chiefs throughout Massachusetts.  Established in 1887 and incorporated in 1949, MCOPA is the oldest professional association of police executives in the United States.  MCOPA is committed to the improvement and professionalism of law enforcement in Massachusetts, sponsors educational and training programs for police chiefs, and advocates for the enactment of appropriate legislation.

The Fire Chiefs Association of Massachusetts, Inc., established in 1893, is a non-profit corporation composed of the Fire Chiefs of cities and towns across the

state. The purpose of this organization is to further the professional advancement

of the fire service; to serve as the recognized Fire Chiefs' organization for the

exchange of ideas, knowledge and experience in the area affecting fire prevention,

fire extinguishment, and the safety of life and property from fire; and to promote

efficient fire administration.

## <u>STATEMENT OF AMICI CURIAE PURSUANT TO RULE 29(B)(5)</u>

No party's counsel authored this brief in whole or in part.  No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief.  No person other than the amici curia, their members or their counsel contributed money that was intended to fund the preparation or submission of this brief.

I.    **SUMMARY OF ARGUMENT**

The trial court correctly decided that the statistical evidence relied upon by the plaintiffs-appellants was insufficient to persuasively establish that the use of the statewide promotional exam for police sergeants by the Massachusetts Bay Transportation Authority ("MBTA") and the municipal defendant-appellees other than the City of Boston resulted in adverse impact on minority promotion rates in those jurisdictions.

The amici endorse and incorporate by reference the arguments offered by the defendants-appellees in their individual briefs.  The amici also support and incorporate by reference the City of Boston's arguments in favor of affirming the district court's judgment in Boston's favor that the promotional exams were job-related and consistent with business necessity and that the plaintiffs failed to demonstrate that there was an alternative employment practice with equal validity and less adverse impact that was available and that the Boston Police Department refused to adopt.  This amicus brief focuses on the substantial policy and managerial considerations which support affirming the trial court's decision.

Based on the absence of state agency defendants in this suit due to this Court's previous decision in Lopez v. Massachusetts, 588 F.3d 69 (1st Cir. 2009), a reversal or remand of the trial court's judgment essentially would place responsibility for resolving the alleged shortcomings of the statewide promotional

examination for police sergeants in the hands (and budgets) of Massachusetts cities and towns.  The amici respectfully submit that such an outcome would be impractical and ill-advised where many of the member municipalities in the Massachusetts civil service system have substantially smaller populations and correspondingly smaller operating budgets for their community police forces than the defendants-appellees in this matter.   This amicus brief therefore focuses on the broader negative implications on local government of allowing evidence of disparate impact through statistical aggregation, and of imposing the burden of test creation and administration upon small municipalities who lack the resources and expertise to undertake such a task.

For the reasons set forth below, the Court should affirm the district court's decision.

## II.    ARGUMENT

### A.    <u>Overview of the Massachusetts Civil Service System</u>

The promotional examination at issue was developed and administered under the Massachusetts civil service system for statewide use.  The purpose of the Massachusetts civil service system is "to guard against political considerations, favoritism, and bias in government employment decisions…and to protect efficient public employees from political control."  <u>Cambridge</u> v. <u>Civil Serv. Comm'n</u>, 43 Mass. App. Ct. 300, 682 N.E.2d 923, 924 (Mass. App. Ct. 1997).

2

Massachusetts first implemented a civil service system through the Massachusetts Civil Service Act of 1884, modeled after the federal government's Civil Service (Pendleton) Act of 1883, becoming only the second state to do so at the time, after New York. JONATHAN WALTERS, PIONEER INSTITUTE FOR PUBLIC POLICY RESEARCH, TOWARD A HIGH PERFORMANCE WORKPLACE: FIXING CIVIL SERVICE IN MASSACHUSETTS 1 (2000), available at http://pioneerinstitute.org/ download/toward-a-high-performance-workplace-fixing-civil-service-in-massachusetts/ (last visited June 1, 2015). Other states gradually followed suit.

The impetus for the civil service laws adopted widely throughout the United States during this period was the perceived impacts of the political patronage or "spoils system" first adopted at the federal level under President Andrew Jackson, which had continued in use by subsequent administrations until after the Civil War. Developments in the Law, *Public Employment*, 97 HARV. L. REV. 1611, 1623-25 (1984). While Congress had debated the establishment of a civil service system for several years in the post-Civil War period, it was not until 1881, when President James Garfield was assassinated by a spurned job seeker who had worked for President Garfield during his campaign yet had not been rewarded with an appointment to a public office, that Congress was compelled to act. Id. at 1627-28.

In its nascent stage, the Massachusetts civil service system was administered by a three-member Civil Service Commission.  The modern version of the system came into being largely through reform legislation adopted in the late 1930s which created a central personnel office, now the Human Resources Division ("HRD"), which has undertaken the burden of developing and administering the examinations and creating certified lists from which civil service appointments are made.  See LEAGUE OF WOMEN VOTERS OF MASS., THE MERIT SYSTEM IN MASSACHUSETTS:  A STUDY OF PUBLIC PERSONNEL ADMINISTRATION IN THE COMMONWEALTH 3-5 (1961).  The Civil Service Commission consequently was relieved of many administrative matters and now dedicates most of its efforts to hearing appeals brought by employees who have been disciplined or bypassed for promotions, or by candidates who are bypassed for original appointments.  Id. at 5.

In its modern incarnation, a variety of state and municipal employees, including police officers, are hired and promoted under the Massachusetts civil service system, which is governed by Mass. Gen. Laws ch. 31, § 1 et seq., as well as  Personnel Administration Rules which are promulgated by the Personnel Administrator of the HRD.  Civil service appointments are made by appointing authorities who select qualified applicants who have taken a competitive examination.  See Executive Office of Administration and Finance, *What is Civil Service*, available at http://www.mass.gov/anf/employment-equal-access-

disability/civil-serv-info/civil-serv-overview/what-is-civil-service.html (last visited
June 1, 2015).

The civil service system covers a variety of positions. <u>See</u>, <u>e.g.</u>, Mass. Gen.
Laws ch. 31, § 51 (civil service positions in cities), § 52 (civil service positions in
towns). Chapter 31 governs all positions in all cities, but in towns, a number of
positions, including the police force, are subject to civil service only if the civil
service system is accepted by the particular town. <u>Id.</u> at §§ 52, 54-55. There are
currently about 162 city and town police departments in the Commonwealth that
are civil service police departments by statutory designation or by election. <u>See</u>
Executive Office of Administration and Finance, *Police Departments Covered by
Civil Service*, available at http://www.mass.gov/anf/ employment-equal-access-
disability/civil-serv-info/guides-and-publications/police-info/police-departments-
covered-by-civil-service.html (last visited June 1, 2015).

HRD is responsible for creating, designing and administering examinations
for purposes of establishing eligible lists for civil service positions. <u>Id.</u> at §§ 3,
5(e) and 16. HRD is responsible for determining the "form, method and subject
matter" of the examinations. <u>Id.</u> at §16. The examinations must "fairly test the
knowledge, skills and abilities which can be practically and reliably measured and
which are actually required to perform the primary or dominant duties of the
position for which the examination is held." <u>Id.</u> Section 16 also requires HRD to

5

"consult with representatives of labor and professionals in the field to increase emphasis upon aptitudes relevant to performing the positions to be tested" in developing a particular examination.  Id.  HRD further is charged under Chapter 31 with approving qualifications for civil service positions, including establishing such qualifications when HRD disapproves qualifications submitted by a municipality's appointing authority.  Mass. Gen. Laws ch. 31, § 5(c).

Under this statutory authority, the Personnel Administrator has promulgated specific sections of the Personnel Administration Rules relative to examinations:

1.      Examination procedures, including grading schedules for the "subject of training and experience as part of a promotional examination."  See Executive Office of Administration and Finance, *Personnel Administration Rules* ("PAR"), Section .06(1), available at http://www.mass.gov/Eoaf/docs/hrd/cs/publications/ personneladministratorrulesforonline.doc (last visited June 1, 2015).

2.      With regard to examination content, the Personnel Administration Rules state that selection procedures for civil service positions "shall be practical in character and shall relate directly to those matters which fairly determine the relative ranking of the persons examined based on the knowledge, abilities and skills required to perform the primary duties (critical and frequent tasks) of the position title or occupational group as determined by reliable and representative job information available to the administrator."  Id. at PAR.06(2)(a).  Examinations

6

"may be assembled or unassembled and may include written, oral, practical or performance tests, training and experience rating, assessment centers, other generally accepted selection procedures, or combinations of these, which, in the discretion and judgment of the administrator, are appropriate for the position title or occupational group being tested." Id.  The Personnel Administration Rules provide that the administrator is required upon request to give "representatives of labor whose members are in the occupational fields to be tested" an opportunity to "consult with the administrator concerning the subject matter to be tested on a particular examination." Id. at PAR.06(2)(b).  The Personnel Administration Rules further require the administrator to "afford professionals in occupational fields to be tested an opportunity to consult on the subject matter of the examinations." Id. However, the "final determination as to form, method and content of an examination" is within the "discretion and judgment of the administrator." Id.

3.      Under the Personnel Administration Rules, the administrator, based on reference to "generally accepted selection procedures," establishes the passing score for each examination. Id. at PAR.06(3).

Promotional appointments in the civil service system must be made "on the basis of merit as determined by examination, performance evaluation, seniority of service or any combination of factors which fairly test the applicant's ability to perform the duties of the position as determined by the administrator." Mass. Gen.

Laws ch. 31, § 3(e).  The weight given to performance evaluation is determined jointly by the Personnel Administrator and representatives of the collective bargaining units containing the titles to be tested.  Id. at § 6B.

The civil service system established in Chapter 31 continues to include the Civil Service Commission primarily as an oversight agency.  The Commission is charged, *inter alia*, with making sure civil service appointments are made in accordance with "basic merit principles."  Police Dept. of Boston v. Kavaleski, 463 Mass. 680, 978 N.E.2d 55, 63 (Mass. 2012). "Basic merit principles" for purposes of Massachusetts' civil service system mean "(a) recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills including open consideration of qualified applicants for initial appointment; (b) providing of equitable and adequate compensation for all employees; (c) providing of training and development for employees, as needed, to assure the advancement and high quality performance of such employees; (d) retaining of employees on the basis of adequacy of their performance, correcting inadequate performance, and separating employees whose inadequate performance cannot be corrected; (e) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, age, national origin, sex, marital status, handicap, or religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens, and; (f)

8

assuring that all employees are protected against coercion for political purposes, and are protected from arbitrary and capricious actions."  Mass. Gen. Laws ch. 31, § 1.

> **B.**     **Delegation of Authority Under the Civil Service System**

Massachusetts state law requires municipalities to make police officer promotions based upon competitive examinations.  Mass. Gen. Laws ch. 31, § 59. A municipal appointing authority under the Massachusetts civil service system may create and administer its own promotional examination as an alternative to the statewide examination developed by the Human Resources Division.  Id. at § 10. Appointing authorities are also permitted under Section 5(l) of Chapter 31, subject to a delegation agreement or similar process with the Personnel Administrator, to incorporate the use of assessment centers as (1) a selection device among ranked candidates on a certification from HRD's eligibility list, (2) a weighted, graded examination component in combination with the other examination components (the multiple choice written examination and the education and experience rating), or (3) as the sole ranking device for selection of candidates.  See Executive Office of Administration and Finance, *Assessment Centers – Use in Civil Service Promotions*, available at http://www.mass.gov/anf/employment-equal-access-disability/civil-serv-info/ exam-info/assessment-ctr-exams/assessment-centers-use-in-civil-service-promotions.html (last visited June 1, 2015).

9

Community specific examinations and assessment centers are expensive and time consuming for communities to develop. For example, the City of Boston paid more than $1.2 million for a consultant to develop and administer the 2002 sergeant, lieutenant and captain promotional exams alone. See *Findings of Fact, Conclusions of Law and Order of Judgment* ("Decision"), Record Appendix ("R.") 89-135, at pg. 42. These specialized examinations can be even more costly to administer, as civil service communities, even under HRD's delegation agreements, are never truly divorced from HRD oversight. Under standard delegation agreements, municipal appointing authorities must still report to and coordinate with HRD and expend the attendant time and resources while doing so. See, e.g., Executive Office of Administration and Finance, *Sample Weighted Graded Delegation Agreement*, available at http://www.mass.gov/anf/docs/hrd/cs/publications/ac/cs-ac-wg-exam-sample-da.doc (last visited June 1, 2015). Moreover, even under delegation agreements, the other facets of the civil service appointment process, such as rights of appeal to the Civil Service Commission by bypassed candidates, remain in force.

### C.    It is Both Impractical and Inequitable to Place Responsibility for the Statewide Civil Service Examination on Individual Communities

The road that this litigation has travelled has been long and eliminated a number of important travelers. Neither the Commonwealth nor the HRD have

10

continued the journey. Yet the HRD created and administered the examinations at issue; it created the promotion eligibility lists that the plaintiffs-appellants challenge; and it created and administered (along with the Civil Service Commission) the system of rules governing the ability of individual communities to select candidates[1]. The entities that are statutorily, financially, and practicably responsible for the examination under challenge are not even before the Court. As determined previously by this Court, because the Commonwealth and HRD were not the "employers" of the plaintiffs-appellants under Title VII, they cannot be liable for the alleged disparate impact of HRD's promotional examination for police sergeant. See Lopez v. Massachusetts, 588 F.3d 69 (1st Cir. 2009).[2] The absence of the real parties in interest in this case creates a grave and substantial risk that unintended consequences and negative collateral impacts will result if the lower court's order is reversed and potential disparate impact liability is imposed

---

[1] For example, the HRD created the rules that deal with selections made on a basis other than strict rank order (i.e. bypassing candidates).

[2] The Massachusetts Supreme Judicial Court has held in related litigation involving the same group of Plaintiffs-Appellants that the Commonwealth and HRD are subject to suit under the Massachusetts Anti-Discrimination Statute, Mass. Gen. Laws ch. 151B, § 4(4A), because the Plaintiffs-Appellants' state court complaint "alleges adequately that the defendants interfered with the plaintiffs' enjoyment of rights protected by G.L. c. 151B, specifically the plaintiffs' right to be free of racial discrimination in opportunities for promotion…." Lopez v. Commonwealth, 463 Mass. 696, 978 N.E.2d 67, 71 (Mass. 2012).

on local communities who exercise little to no actual control over the development and administration of the statewide examination.

A remand of the judgment to the lower court for the reasons advanced by the appellants and their supporting amici essentially would place responsibility for the alleged disparate impact of the promotional examination on the communities in the civil service system, rather than upon the system itself and its administrators. This would be both an inequitable and impractical result because the alleged disparate impact is not created, caused or contributed to by the civil service communities. The individual communities do not create or administer the promotional examination, or determine the other components of the selection method. The individual communities do not create the eligibility list. Rather, they are provided the list by HRD after the promotional examination scores and the experience and education ratings are determined.

The amici defer to the defendants-appellees' briefs regarding why the trial court correctly decided that multiple municipality hiring statistics should not be aggregated in this case to manufacture statistical significance to support disparate impact. However, one obvious logical inconsistency in aggregating promotional statistics under the circumstances is that in the Massachusetts civil service system, individual communities make selections only off their own eligibility lists, a list generated specifically for that individual community. A municipality does not

12

receive and cannot make selections off of the lists from other communities.  See

Mass. Gen. Laws ch. 31, § 59.  As the district court noted in its decision, different

municipalities may have "variations in original selection procedures and

subsequent in-service training" which potentially could affect candidate

performance on a statewide competitive examination.  (R. 106).  It is

fundamentally unfair to hold a small community such as Avon (population 4,356

(2010)) responsible for hiring decisions of large cities such as Boston (population

645,966 (2013)), especially where communities such as Avon do not even have

access to Boston's list, or vice versa.

        Massachusetts communities that have proactively attempted to address the

diversity of their police and fire departments often have found their efforts

rebuffed through legal challenges to affirmative action or similar programs unless

there is evidence of past discrimination specific to the governmental actor seeking

to use the racial preference.  See, e.g., Quinn v. City of Boston, 325 F.3d 18 (1st

Cir. 2003) (continued use of race-conscious affirmative action by fire department

with respect to hiring of entry-level firefighters violated Equal Protection Clause,

where consent decree had expired and the proportion of minority entry-level

firefighters within the department had achieved parity with the city's population

statistics); see also Massachusetts Ass'n of Minority Law Enforcement Officers v.

Abban, 434 Mass. 256, 748 N.E.2d 455, 461-62 (Mass. 2001) ("without the

consent decree's mandate, race, a consideration specifically identified by the Legislature in G.L. c. 31, §1(e), as inconsistent with basic merit principles, cannot be used to justify a bypass."); <u>Ricci v. DeStefano</u>, 557 U.S. 557, 587 (2009) (race-based decision to invalidate promotional examination results impermissible absent a strong basis in evidence that employer would otherwise be liable for disparate impact discrimination).

The <u>Quinn</u> decision is particularly instructive when juxtaposed against the present case and the plaintiffs-appellants' argument for statistical aggregation. At the time the <u>Quinn</u> case was decided, and continuing through the present day, other Massachusetts communities continue to be subject to consent decrees for their police department and/or fire department original appointments. <u>See</u> *Police Departments Covered by Civil Service,* <u>supra</u> (list includes "consent decree" and "non consent decree" communities). If the District Court's decision is overturned as requested by plaintiffs-appellants, the likely impact of such a decision will be to place Massachusetts cities and towns that are not currently subject to a consent decree, and accordingly have no legally cognizable past history of discrimination, in a "Catch 22" -- on the one hand susceptible to disparate impact liability under Title VII because that individual community's data could be aggregated <u>with other communities to make a prima facie showing of disparate impact</u>, while on the other hand unable to proactively address the diversity of the workforce without exposing

14

itself to allegations of reverse discrimination under Ricci, Quinn and analogous precedent because there must be evidence of discrimination in the specific community to justify affirmative action or similar race-based considerations.

The amici respectfully suggest that Congress could not have intended to place municipalities in such a no-win position when enacting Title VII. The major purpose of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., was to "prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex or national origin." Massachusetts Elec. Co. v. Massachusetts Commn. Against Discrimination, 375 Mass. 160, 375 N.E.2d 1192, 1198 (1978), quoting Franks v. Bowman Transp. Co., 424 U.S. 747, 763 (1976). Title VII's purposes cannot be addressed under the circumstances where responsibility for the statewide promotional examination is being placed on the shoulders of the defendants-appellees -- employers who had no modicum of control over the employment practice which allegedly resulted in a disparate impact on minority candidates for promotion. Cf. Bradley v. City of Lynn, 403 F. Supp. 2d 161, 169 (D. Mass. 2005) (finding HRD was an "employer" for purposes of Title VII with regard to entry level firefighters and police officers because HRD "does more than merely license and regulate…act[ing] as a 'hiring party' that extensively controls 'the manner and means' by which firefighters and police officers are selected."). The

15

defendants-appellees should be not liable under Title VII where they are merely complying with facially-neutral statewide promotional examination requirement that restrict promotions to those who take the statewide examination controlled developed and administered by the Commonwealth through HRD. See Camacho v. Puerto Rico Ports Auth., 369 F.3d 570, 578 (1st Cir. 2004) (testing authorities are not subject to Title VII); Department of Transp. v. Public Citizen, 541 U.S. 752, 770 (2004) (a defendant who cannot prevent a certain effect due to its limited authority over the relevant actions cannot be considered a "cause" of the effect). While the amici understand that intentional discrimination is not necessary to establish Title VII disparate impact liability, exposing the defendants-appellees to Title VII in circumstances such as this, where they do not control, develop and administer the examination and cannot hire off of each other's lists, casts the potential net of Title VII disparate impact liability far beyond what the statute, case law or common sense allows.

The appellants and their supporting amici gloss over the issue of control by pointing to the Hobson's "choice" of civil service communities in Massachusetts to develop and administer their own selection methods, and presumably thereby include components that may eliminate the alleged disparate impact from the statewide selection method.   While delegation may be a *possibility* under the civil

service system[3], for many of the Massachusetts communities subject to civil

service, it is simply not a *practical* or financially feasible option.  There are 162

cities and towns with police forces that are currently under the Massachusetts civil

service system.  See *Police Departments Covered by Civil Service,* supra.  Using

the most recent available population statistics, the average community size from

this group is 33,704, and the median size is 21,499.  The communities range from

Avon, the smallest, with a population of 4,356, to Boston, the largest, with a

population of 645,966.  Canton, with a population of 21,561, lies just above the

median figure for the 162 civil service communities in Massachusetts.  Canton's

total budget for its police department in FY2015 was $4.26 million.  See Town of

Canton, *2015 Annual Town Meeting Warrant*, pg. 85, available at

http://town.canton.ma.us/ DocumentCenter/Home/ View/1382 (last visited June 2,

2015).

    For some perspective on the ability of communities similar to Avon's to

develop their own selection methods, at the trial there was evidence that a single

municipality -- Boston paid consulting firm Morris & McDaniel more than $1.2

million to develop and administer the 2002 sergeant, lieutenant and captain

---

[3] As the Commonwealth is not a party, a decision that effectively requires the
defendants-appellees to act absent their state's enabling authority and to violate
state law places an untenable burden on the principles of federalism.  In Nixon v.
Missouri Municipal League, 541 U.S. 125 (2004), the Supreme Court recognized
that the states empower their local governments, not the federal government.

promotional exams.  <u>See</u> Decision at 42.  Assuming Canton wanted to develop an

examination similar to Boston's 2002 model, the cost in 2015 would be more than

25% of Canton's total police department budget before adjusting the anticipated

consultant fee to account for inflation since 2002.  Even discounting the breadth of

services that might be necessary to develop and administer a promotional exam for

a smaller civil service community, few municipalities in Massachusetts have the

budgetary flexibility to bear these costs themselves.   Separate and apart from the

dearth of funding, the development of examinations and other associated selection

methods at the local level in lieu of a statewide system requires an investment of

staff time.  A small local police department dedicating its limited local expertise

towards these ends likely could do so only by diverting scarce policing resources

from public safety duties to administrative functions.

Mitigating the lack of local resources through attempted regionalization

raises still more issues.  In or about 2013, HRD established a pilot program, the

Regional Assessment Center Initiative ("RACI"), to provide regionalized

assessment centers for police chief, deputy chief and police captain civil service

positions.  The RACI program is currently suspended and under review by HRD.

<u>See</u> Executive Office of Administration and Finance, *Regional Assessment Center*

*Initiative*, available at http://www.mass.gov/anf/employment-equal-access-

disability/civil-serv-info/exam-info/regional-assessment-center-initiative.html (last

visited June 2, 2015).  Outside of a state-led program like the RACI program,

Mass. Gen. Laws ch. 40, § 4A does authorize cities and towns to join with other

municipalities to jointly perform any of a government unit's "services, activities or

undertakings which any of the contracting units is authorized by law to perform."

However, civil service communities attempting to regionalize this process for cost-

savings could still only do so with the permission and oversight of HRD under a

delegation agreement, which could be detrimental to potential regional

partnerships between civil service and non-civil service communities who have

specifically elected *not* to operate within the Civil Service system.

Moreover, potential bargaining obligations that each municipality would

have with its police bargaining unit in order to change the promotional

appointment selection method locally likely would make it difficult or impossible

to establish a delegation arrangement outside the state-wide civil service system,

and could make regionalization exceedingly difficult as a practical and political

matter.  Under Mass. Gen. Laws ch. 150E, § 6, Massachusetts cities and towns, as

public employers subject to the statute, must negotiate over mandatory subjects of

collective bargaining with the union representatives of their employees.  A refusal

to bargain collectively in good faith regarding a mandatory subject of collective

bargaining is a prohibited practice under Chapter 150E.  Mass. Gen. Laws ch.

150E, § 10(a)(5); see also School Committee of Newton v. Labor Relations

19

Commn., 388 Mass. 557, 447 N.E.2d 1201, 1211 (Mass. 1983), citing Natl. Lab.

Relations Bd. v. Katz, 369 U.S. 736, 743-47 (1962).  The Massachusetts

Commonwealth Employment Relations Board ("CERB"), formerly known as the

Labor Relations Commission, is charged with investigating and adjudicating

alleged prohibited practices under Chapter 150E.  Mass. Gen. Laws ch. 150E, § 11.

CERB previously has held that promotional procedures are mandatory subjects of

collective bargaining.  Chief Justice for Admin. and Mgt. of the Trial Court and

Natl. Assoc. of Govt. Employees, Labor Relations Commission Case No. SUP-05-

5207 (CERB, April 30, 2008).  If there is statistically significant adverse impact on

minority promotions due to the statewide promotional examination, it should

properly be HRD, a state agency with specialized expertise, statewide knowledge,

and available resources, which should address that impact and implement changes

to the promotional examination, not 162 individual cities and towns.  It would be a

waste of scarce resources to require each community to develop its own

examination.  Moreover, if local communities are required to develop their own

examinations, the objectives of the civil service system and Title VII could be

compromised by a balkanized and confusing array of local examinations, leading

to the risk of inconsistent results.

        Given that they are not parties to this case, the Commonwealth and HRD

will apparently be excluded from any remedy the court awards on remand.  This is

in contrast to the well-known Beecher consent decree cases in which HRD's predecessor agency for the development and administration of civil service examinations, the Civil Service Commission, was a participant in both the suits and the consent decrees entered by the trial court.   See, e.g., Castro v. Beecher, 334 F. Supp. 930 (D. Mass. 1971) (requiring defendant Civil Service Commission to submit a comprehensive plan for recruiting minority groups for all police forces covered by civil service law), *aff'd in part, rev'd in part*, 459 F.2d 725 (1st Cir. 1972), as further amended by 365 F. Supp. 655 (D. Mass. 1973) and 386 F. Supp. 1281 (D. Mass. 1975) and Boston Chapter, NAACP, Inc. v. Beecher, 371 F. Supp. 507 (D. Mass. 1974) (requiring defendant Civil Service Commission to follow procedure ordered by court to establish pool of eligible firefighter candidates for each fire department subject to civil service law) , *aff'd*, 504 F.2d 1017 (1st Cir. 1974).  If the appellants were to prevail, the only option available to the court on remand would apparently be to make the defendants-appellees responsible for creating their own promotional examinations as the only option, a course of action that would be contradictory to the provisions of the Civil Service Law, which allows local communities to use the statewide examination.  This outcome would have far reaching and unintended consequences for the 156 Massachusetts civil service system cities and towns who are not parties to this litigation.

21

**D.    The Lower Court Correctly Decided that Individual Community Statistics Should Not Be Aggregated Under the Circumstances.**

The lower court correctly analyzed the logical flaw in the Plaintiffs-Appellants' aggregation argument while recognizing that a sergeant's exam operates, not on a blank slate, but upon a tablet already populated with numbers. For example, using the Plaintiffs-Appellants' arguments, consider a scenario with five cities, each with one open sergeant position, with four of the cities having one white person who has taken and also passed the sergeant's exam, and a fifth city with four minority applicants who have taken and passed the sergeant's exam, but no white applicants who have done so.  In that scenario, the promotional process of four white officers and one minority officer out of a pool of eight candidates violates the EEOC's four-fifths rule on an aggregated basis.   (R. 343-44).  Yet, in each city in this scenario, there is no question of disparate impact or treatment.

The United States' amicus brief attempts to justify the aggregation process in this case using Paige v. California, 291 F.3d 1141 (9th Cir. 2002) and Vulcan Pioneers, Inc. v. New Jersey Dep't of Civil Serv., 625 F. Supp. 527 (D.N.J. 1985). Both cases provide little support for the aggregation argument in this case other than the use of the word "aggregation" in each decision.  In Paige, the question was whether to aggregate positions to achieve a statistically viable basis for analysis and to aggregate the minority employee base as a basis for comparison.  The Paige case involved a single employer not the aggregation of employment decisions

22

across multiple employers. While <u>Vulcan</u> provides a closer analogy, it involved the use of aggregated test results used by fire departments who were all subject to the same consent decree and who had agreed to be bound by the terms of that decree. Even more importantly, the court in <u>Vulcan</u> concluded that "all [the tests] were utilized by the same employer, the New Jersey Department of Civil Service." <u>Vulcan Pioneers, Inc.</u>, 625 F. Supp. at 544. Unlike in <u>Vulcan</u>, this case involves multiple employers none of whom are subject to a consent decree; thus, <u>Vulcan</u> cannot stand as authority for the proposition that employment statistics can be aggregated across multiple employers who act independently in making hiring decisions.

> ### E.    A Reversal and/or Remand of the Trial Court's Decision Could Call into Question the Legitimacy of Past and Future Promotions, Impair the Orderly Replenishment of Chains of Command, and Potentially Jeopardize Public Safety

For years the Massachusetts civil service system has provided municipalities with a system for original and promotional appointments founded on basic merit principles. Municipal police and fire departments are essentially paramilitary organizations. They rely on respect for rank and positions of authority to underpin and buttress the legitimacy of the organizational hierarchy. A reversal or remand of the district court's judgment also could place the legitimacy of past promotions in doubt in the defendants-appellees' communities as well as generally in other civil service communities in Massachusetts, and place future promotions in a state

23

of flux, thus causing confusion and uncertainty in the delivery of public safety services to the residents of Massachusetts.

The amici submit that the inappropriate use of statistical aggregation to suggest that a particular community or communities have failed to provide equal opportunities for all qualified individuals to advance to positions of greater responsibility improperly calls the legitimacy of the organizational hierarchy of our community police departments into question.  A remand or reversal of the trial court's decision regarding the statistical aggregation issue is not likely to result in the reversal of prior promotions of personnel in the defendant-appellee police departments, yet there may still be a negative impact on those individuals who were promoted based on the promotional examinations at issue, as well as the subordinates they oversee and their superiors who rely upon officers at the police sergeant level as important mid-level managers of personnel to help drive the organizational mission.  The credibility and authenticity of the police sergeants promoted under the current civil service system may, in the eyes of the other members of their department and the members of their community, be placed in doubt, potentially damaging organizational effectiveness and impairing community policing efforts.  Moreover, future promotions may be delayed indefinitely if the trial court decision is reversed or remanded, and the individual civil service

communities are obliged to undertake the substantial expenditure of time, resources and personnel to develop their own examinations.

**F.     The Potential Impacts of a Reversal and Remand on other State Civil Service Systems in the United States**

A number of states in addition to Massachusetts have civil service systems with statewide promotional exams.   See, e.g., N.Y. CVS Laws § 52 (New York); Wash. Rev. Code § 41.08.040 (Washington); Cal. Govt. Code §§ 18930-18941 (California); Tex. Local Govt. Code § 143.032 (Texas).   While the precise details and procedures of these systems vary from state to state, the financial and other constraints on local governments are very similar to those confronting the defendants-appellees and the other 156 cities and towns with police departments subject to the civil service law in Massachusetts.

Based on applicable United States Supreme Court and federal appellate precedent, civil service communities in states besides Massachusetts are likely to face the same conundrum detailed above - -they are unable to proactively move towards a more diverse police force in the absence of prior evidence of discrimination without risking a reverse discrimination claim, yet they would be susceptible to disparate impact liability if claimants are allowed to aggregate statistics across a state to prove disparate impact liability as the plaintiffs-appellants are seeking here.

25

If this Court rules for the plaintiffs-appellants, and other circuits follow suit in allowing claimants to show disparate impact under Title VII through statistical aggregation of individual community hiring data, the issues discussed above will be experienced by local governments throughout the United States.   The Court should avoid this potentially far reaching and negative impact by affirming the judgment, finding that the district court correctly rejected statistical aggregation to establish the Title VII claims alleged by the plaintiffs-appellants in this case.

## III.   CONCLUSION

The district court's rejection of statistical aggregation to show disparate impact on minority promotions to police sergeant in the defendants-appellees' communities is based on sound legal reasoning.  The judgment therefore should be affirmed to avoid a result whereby financially and resource-constrained municipalities essentially will be forced to take responsibility for the alleged flaws in a statewide civil service selection examination that they do not control but which is rather administered by the Commonwealth of Massachusetts through its Human Resources Division.  To hold otherwise will require major resource reallocation and personnel diversion by affected municipalities, and will cast needless doubt and uncertainty upon past and future promotions to the position of police sergeant.

Respectfully submitted,

*/s/ Christopher L. Brown*
Christopher J. Petrini (C.A.B. 1136164)
cpetrini@petrinilaw.com
Christopher L. Brown (C.A.B. 1170459)
cbrown@petrinilaw.com
Petrini & Associates, P.C.
372 Union Avenue
Framingham, MA 01702
Phone:  (508) 665-4310
Fax:  (508) 665-4313

Dated:  June 23, 2015

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 6,778 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) the type style requirements of Fed. R. App. P. 32(a)(6) because this brief

has been prepared in a proportionally spaced typeface using Microsoft Word in 14

point Times New Roman type style.

/s/ *Christopher L. Brown*
Christopher L. Brown

Dated:  June 23, 2015

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 23, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Harold L. Lichten
Benjamin Weber
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

Charles D. Boddy
Raquel D. Ruano
Office of the City Attorney
200 Common St., Ste. 306
Lawrence, MA 01840

Kerry Regan Jenness
City of Methuen
Office of the City Solicitor
41 Pleasant St., Suite 311
Methuen, MA 01844

Tim D. Norris
Joshua R. Coleman
Collins, Loughran & Peloquin P.C.
320 Norwood Park South
Norwood, MA 02062

Susan M. Weise
Lisa Skehill Make
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

Stephen Churchill
Fair Work, P.C.
192 South Street, Suite 450
Boston, MA 02111

Anne L. Radazzo
25 Westwind Dr.
Methuen, MA 01844

Iraida J. Alvarez
Robert L. Quinan, Jr.
Sookyoung Shin
MA Attorney General's Office
1 Ashburton Place, 20th Floor
Boston, MA 02108

Kay H. Hodge
John M. Simon
Stoneman, Chandler & Miller LLP
99 High St., Suite 1601
Boston, MA 02110

Robert P. Morris
Morgan, Brown & Joy LLP
200 State St.,11th Fl.
Boston, MA 02109

Maurice Martin Cahillane
Egan, Flanagan & Cohen PC
67 Market St.
Springfield, MA 01102

Edward M. Pikula
Anthony I. Wilson
John T. Liebel
City of Springfield
Law Department
36 Court St.
Springfield, MA 01103

William G. Cullinan
O'Connor Martinelli & Cohn
1391 Main St., Ste. 1022
Springfield, MA 01103

Kevin Sean McDermott
MBTA Law Department
10 Park Plaza, Suite 7760
Boston, MA 02116

James F. Kavanaugh
Christopher K. Sweeney
Conn Kavanaugh Rosenthal Peisch &
Ford, LLP
Ten Post Office Square
Boston, MA 02109

Christine P. O'Connor, City Solicitor
Rachel Brown, Assistant City Solicitor
City of Lowell Law Department
375 Merrimack Street, 3rd Floor
Lowell MA 01852-5909

_/s/ Christopher L. Brown_
Christopher L. Brown (C.A.B. 1170459)