No. 14-1952

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

PEDRO LOPEZ, et al.
Plaintiffs-Appellants

v.

THE CITY OF LAWRENCE, et al.
Defendants-Appellees

On Appeal from a Judgment of the United States
District Court of Massachusetts

_____

DEFENDANTS-APPELLEES
CITY OF METHUEN'S AND
WILLIAM M. MANZI, MAYOR'S BRIEF

_____

<u>Counsel for Defendants/Appellees City of Methuen
and William M. Manzi, Mayor</u>
Kerry Regan Jenness, C.A.B. 87787
City of Methuen
Office of the City Solicitor
41 Pleasant St., Suite 311
Methuen, MA 01844
(978) 983-8575
krjenness@ci.methuen.ma.us

DATED: June 17, 2015

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................... ii

TABLE OF AUTHORITIES............................... iii

ISSUES PRESENTED .................................... 1

STATEMENT OF THE FACTS.............................. .2

SUMMARY OF THE ARGUMENT............................. .4

ARGUMENT

    I.   PLAINTIFF ABEL CANO FAILED TO ESTABLISH A PRIMA FACIE CASE OF ADVERSE IMPACT AGAINST DEFENDANT CITY OF METHUEN.  ...............5

    II   THE TRIAL COURT WAS CORRECT NOT TO AGGREGATE DATA ACROSS JURISDICTIONS, AND ONLY TO USE METHUEN'S DATA TO ASSESS ADVERSE IMPACT TO METHUEN TEST TAKERS.  .....................6

    III.  THE TRIAL COURT WAS CORRECT TO FIND THAT THE HRD EXAMS WERE VALID.  ....................7

    IV.  METHUEN CANNOT BE HELD LIABLE UNDER TITLE VII FOR UTILIZING THE STATE-WIDE CIVIL SERVICE TESTING REGIME FOR PROMOTIONS TO SERGEANT.  .................................8

CONCLUSION......................................... 10

**TABLE OF AUTHORITIES**

**Cases**

Bradley v. City of Lynn, 443 F. Supp.2d 145 (D. Mass 2006) ...................................................7

Ricci v. DeStefano, 557 U.S. 557 (2009).....................8, 9

**Statutes**

42 U.S.C. §§ 200e.........................................9, 10

M.G.L. c. 31, §59.............................................8

M.G.L. c. 31, §65.............................................8

**ISSUES PRESENTED**

I.  Whether the trial court was correct that Plaintiff Cano failed to establish a prima facie case of adverse impact against Defendant City of Methuen.

II. Whether the trial court was correct not to aggregate data across jurisdictions, and only to use Methuen's data to assess adverse impact to Methuen test takers.

III. Whether the trial court was correct in finding that the HRD exams were valid.

IV. Whether the City of Methuen can be held liable under Title VII for utilizing the statewide civil service testing regime for promotions to sergeant.

## STATEMENT OF THE FACTS

The City of Methuen and its former mayor, William M. Manzi (Methuen's current mayor is Stephen N. Zanni), (hereinafter, collectively, "Methuen") are Defendants-Appellees. As found below, there are "no statistically reliable indicators" showing that minority applicants in Methuen were adversely impacted by either the 2006 or 2008 promotional exams. (R. 114).

The record below shows that there was no statistical significance to the testing data for Methuen for either the 2006 or 2008 exams. Methuen in fact did not promote anyone from the 2008 exam. (R. 114). Plaintiffs' expert Dr. Joel Wiesen agreed that "for the City of Methuen there were no statistically significant findings." (R. 725). Dr. Wiesen conceded that Methuen's numbers were so small that there was not enough mathematical power to show statistical significance. (R. 725). To determine adverse impact as to Methuen only, for promotion rates, passing rates, effective passing rates, and average test scores, all were statistically insignificant. (R. 726, 4311, 4321).

Dr. Wiesen testified that there were no statistically reliable indicators that show that minority applicants in Methuen were adversely affected by Methuen's use of the 2006 or 2008 promotional exams. (R. 730-731). Another plaintiff's expert, Dr. Cassie Lynn Fields, concurred that there was no

2

adverse impact proven for Methuen for 2006 or 2008. (R. 1138). Dr. Wiesen even admitted that because of the small sample size in Methuen, any deviation in scoring may have been "just due to chance." (R. 1534).

In 2006, Methuen had four minority test takers and twenty two white test takers; only one promotion was made. (R. 2381). The promotion was made to a non-minority. (R. 2381). If that single promotion were made to a minority under "shift of one" analysis, there is no adverse impact. (R. 2381). The fact that shifting one promotion from a white test taker to a minority completely changes the adverse impact analysis can only lead to the conclusion that the sample size in Methuen is insufficient to determine adverse impact. (R. 2381). Defendants' expert Dr. Jacinto Silva explained that the shift of one in Methuen's case led to a zero in the denominator of the formula he was using for adverse impact, and therefore was mathematically impossible to represent. (R. 2381) Like Dr. Wiesen, Dr. Silva also concluded that there was "no evidence whatsoever" of adverse impact in Methuen. (R. 2383).

As noted by other Defendants-Appellants, the only information received from the state Human Resources Division (HRD) concerning the results of the exam for test-takers was the eligibility lists for promotion. Methuen had no access to information regarding which test-takers did not make the

3

eligibility lists, nor any demographic information related to the race of test-takers who did not make the lists. Neither Methuen nor any other jurisdiction can appoint an applicant / test-taker from another jurisdiction. (R. 1278). The real world selection situation faced by each jurisdiction's appointing authority is that they can evaluate only those officers who are competing for promotion within their own department. (R. 2025). Even aggregating data across multiple years within a jurisdiction is fraught, due to the likelihood of the same test takers re-taking the exam. (R. 107-108).

## SUMMARY OF THE ARGUMENT

The undisputed testimony from Plaintiffs' own experts is that there was no adverse impact against minority test-takers in the City of Methuen for either the 2006 or 2008 promotional exams. Methuen relied upon HRD to design, validate, and promulgate the exam. While municipalities in Massachusetts may elect to design their own promotional exams, they are not required to, and any individual jurisdiction's exam is subject to HRD's review and approval. (R. 100). Methuen was entitled to rely upon HRD's expertise in promulgating, creating, and administering promotional examinations. While adverse impact was not proven against Methuen, even in the jurisdictions in which some adverse impact was found, the trial court was correct to find that the HRD tests were valid. Methuen and other Defendants

4

should not be liable under Title VII when relying upon the testing created and administered by HRD.

## ARGUMENT

### I. PLAINTIFF ABEL CANO FAILED TO ESTABLISH A PRIMA FACIE CASE OF ADVERSE IMPACT AGAINST THE CITY OF METHUEN.

As found by the Court, evidence from Plaintiffs' expert, Dr. Wiesen, indicated that there was no statistically significant data showing that minority candidates in Methuen were adversely impacted by either the 2006 or 2008 sergeant promotional exams. (R. 114). All experts agreed that the data from the City of Methuen was such a small sample size that no adverse impact could be found. (R. 725, 2381). If the solitary promotion in 2006 had been awarded to a minority test-taker instead of a non-minority, that "shift of one" would have skewed the analysis completely enough that it would not be able to be represented mathematically. (R. 2381).

Plaintiffs' experts agreed that there was no statistically significant adverse impact in either the 2006 or 2008 exams. (R. 725, 726, 731, 1138). Without any statistically significant data – indeed, what data there is relates only to a single promotion over both exam periods – no adverse impact can be proven. On this basis, Plaintiff Cano cannot carry his burden of proving a prima facie case of disparate impact against the City of Methuen from either the 2006 or 2008 promotional exams.

**II. THE TRIAL COURT WAS CORRECT NOT TO AGGREGATE DATA ACROSS JURISDICTIONS, AND ONLY TO USE METHUEN'S DATA TO ASSESS ADVERSE IMPACT TO METHUEN TEST TAKERS.**

Plaintiffs propose that data from different municipalities and towns should be aggregated to prove adverse impact against minority test-takers for HRD's promotional examination. (R. 105-108). As the Court below correctly found, this is simply untenable. Municipalities may only promote to sergeant officers already employed in their own departments. (R. 106). Methuen only had access to certification lists regarding its own officers, not those of Springfield or Lawrence. Even if it had access to such data, it simply could not use it to accomplish the purpose of the test, which is to promote officers from within its ranks. (R. 106).

The Plaintiffs believe that if they can show data for adverse impact by aggregating the results of all test-takers statewide for the promotional examination, then Methuen will be liable for using the HRD exam. (R. 106). As the Court below noted, there are many reasons why there will be differences between and among candidate pools in different municipalities. (R. 106). Since the pool is made up of person already hired and trained within a particular municipality, they may be quite similar to one another and quite distinct in skills and experience from those in a neighboring city. (R. 106). Similarly, pools of different sizes can produce anomalous

6

results when aggregated. (R. 107). The small size of Methuen's test-taking and promotion selection pool makes it particularly ill-suited for aggregation with data from other communities.

The Court below correctly rejected the use of aggregated data across jurisdictions as "unpersuasive". (R. 108). See Bradley v. City of Lynn, 443 F. Supp. 2d 145,165 (D. Mass. 2006) (reasonable not to aggregate HRD statewide data.) Plaintiffs have not provided persuasive evidence to overcome the arguments against aggregation.

### III. THE TRIAL COURT WAS CORRECT TO FIND THAT THE HRD PROMOTIONAL EXAMS WERE VALID

As noted throughout this brief, expert analysis of Methuen's testing data for 2006 and 2008 showed no statistically significant adverse impact to minority test-takers. Methuen therefore would never get beyond the first prong of the disparate impact analysis to explore whether the test was valid or whether a business necessity supported the exam. See Bradley v. City of Lynn, 443 F. Supp. 2d 145 (D. Mass. 2006)(only after adverse impact is shown does the burden shift to the defendant to prove validity and business necessity.) Methuen, however, takes this opportunity to note for the record that the Court below did examine the validity of the test in relation to Boston and found it valid. (R. 123-124). The fact that the exam

7

arguably "could have been better does not mean necessarily that it was not good enough to be deemed sufficient." (R. 124).

As the Supreme Court cautioned in Ricci v. DeStefano, the existence of alternative testing methods, by itself, does not mean that such methods were available to a municipality at the time a promotional or other examination was given, nor can alternative methods be presumed to produce less adverse impact than a traditional examination. See Ricci v. DeStefano, 557 U.S. 557, 591 (2009). Again, with regard to Methuen, no cognizable adverse impact was shown, but in relation to a jurisdiction in which it was, the Court found ample evidence that the test was valid. (R. 116-124).

**IV. METHUEN CANNOT BE HELD LIABLE UNDER TITLE VII FOR UTILIZING THE STATEWIDE CIVIL SERVICE TESTING REGIME FOR PROMOTIONS TO SERGEANT.**

Methuen, as an employer, is subject to Title VII, but that fact alone does not mean that Methuen cannot rely upon the examination provided by HRD. Under Massachusetts law, civil service promotions for police officers must be made on the basis of a competitive examination, either the examination administered by HRD or an individual exam approved by HRD. M.G.L. Ch. 31, Sec. 59, 65.  HRD has the statutory authority to create, promulgate, and administer the exams.

As stated by the Supreme Court in Ricci, employment tests such as the promotional examination at issue here can be "an

8

important part of a neutral selection system that safeguards against the very racial animosities Title VII was intended to prevent." Ricci, 557 U.S. 557, 584. Such examinations "create legitimate expectations on the part of those who took the tests," applicants who may have made personal sacrifices in terms of time spent studying and expenditures for study materials. Id. at 583-584. This is exactly why liability for employers under Title VII is constrained to "cases in which there is a strong basis in evidence of disparate-impact liability." Id. at 583. If an employer cannot adjust the scores of a test based on race, "then it follows *a fortiori* that it may not take the greater step of discarding the test altogether to achieve a more desirable racial distribution of promotion-eligible candidates – absent a strong basis in evidence that the test was deficient" Id. at 584, citing Title VII, 42 U.S.C. §200e-2(*l*).

Ricci is controlling for the facts at issue. Simply put, without a prima facie case of disparate-impact liability, the analysis must stop. Even where that threshold level is reached, more evidence must accrue to provide a "strong basis" that would enable a city to throw out the results of an otherwise properly-administered promotional exam on the basis of race. Id. at 587. For Methuen, no such threshold showing was reached. Therefore, even more so than under the facts of Ricci, Methuen would have

9

no basis for throwing out the results of HRD's promotional exam, and indeed might have faced liability for disparate treatment under Title VII if it had done so.

Not only was no statistically significant adverse impact proven in relation to Methuen's test takers, but Methuen would not have had access to any information regarding how the test was devised or administered. Methuen cannot be liable for a test it did not create, which it was compelled to utilize under state Civil Service law, and for which no adverse impact was proven in regard to its test-takers, the only applicants Methuen could have promoted in the first place.

## CONCLUSION

For the foregoing reasons, the City of Methuen argues that the Court's judgment below should stand. Plaintiffs did not prove disparate impact discrimination under 42 U.S.C. sec. 2000e-2(k) against the City of Methuen due to the lack of statistically reliable indicators (R. 114, 135).

Respectfully submitted,

CITY OF METHUEN and WILLIAM MANZI, III, in
his capacity as Mayor,

/s/Kerry Regan Jenness
Kerry Regan Jenness (C.A.B.   87787)
City of Methuen
Office of the City Solicitor
41 Pleasant St., Suite 311
Methuen, MA 01844
(978) 983-8575
Dated: June 17, 2015

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.   This brief complies with the type-face type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,396 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a monospaced typeface using Microsoft Office Word with Courier New, 12-point type space.

>                     /s/ Kerry Regan Jenness
>                     Kerry Regan Jenness
>                     Counsel for Defendants/Appellees City
>                     of Methuen and William M. Manzi, Mayor

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 17, 2015, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system:

Harold L. Lichten, C.A.B. 22114
Benjamin Weber, C.A.B. 1159650
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617)-994-5800
hlichten@llrlaw.com
bweber@llrlaw.com


Charles Dunstan Boddy
Jr. Richard D'Agostino
Office of the City Attorney
200 Common St., Ste. 306
Lawrence, MA 01840


Iraida J. Alvarez
Robert Lawrence Quinan, Jr.
Sookyoung Shin
MA Attorney General's Office
1 Ashburton Place, 20th Floor
Boston, MA 02108


Rachel M. Brown
Shaprio Haber & Urmy LLP
Seaport East
2 Seaport Lane
Boston, MA 02210

Christine Patricia O'Connor
City of Lowell
375 Merrimack St., 3'd
Fl. Lowell, MA 01852


Daniel C. Brown
Joshua Ryan Coleman
Tim D. Norris
Collins, Loughran & Peloquin P.C.
320 Norwood Park South
Norwood, MA 02062


Laurence J. Donoghue
Law Office of Corinne Hood Greene
One Thompson Square, Ste. 502
Charlestown, MA 02109


Kay H. Hodge
John Matthew Simon
99 High St., Suite 1601
Boston, MA 02201


Lisa Skehill Maki
City of Boston Law Department
One City Hall Plaza
Room 615
Boston, MA 02201


Robert P. Morris
Morgan, Brown & Joy LLP
200 State St., 11th Fl.
Boston, MA 02109


Maurice Martin Cahillane
Egan, Flanagan & Cohen PC
67 Market St.
Springfield, MA 01102

Harry P. Carroll
John Thomas Liebel
Edward M. Pikula
City of Springfield
Law Department
36 Court St.
Springfield, MA 01103


William G. Cullinan
O'Connor Martinelli & Cohn
1391 Main St., Ste. 1022
Springfield, MA 01103


Kevin Sean McDermott
MBTA Law Department
10 Park Plaza, Suite 7760
Boston, MA 02116


/s/ Kerry Regan Jenness
Kerry Regan Jenness
Counsel for Defendants/Appellees City
of Methuen and William M. Manzi, Mayor

14