No. 14-1952

_____

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

_____

**PEDRO LOPEZ, et al.,**
*Plaintiffs-Appellants*

v.

**CITY OF LAWRENCE, et al.,**
*Defendants-Appellees*

_____

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

**BRIEF OF DEFENDANTS-APPELLEES MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY, DANIEL GRABAUSKAS, and THE
BOARD OF TRUSTEES OF THE MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY**

_____

James F. Kavanaugh, Jr. (C.A.B. 39984)
Christopher K. Sweeney (C.A.B 1158298)
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA  02110
Tel:  (617) 482-8200
jkavanaugh@connkavanaugh.com
csweeney@connkavanaugh.com
Counsel for Defendants/Appellees

**<u>Corporate Disclosure Statement</u>**

Appellees Massachusetts Bay Transportation Authority, Daniel Grabauskas, in his capacity as General Manager, and the Board of Trustees for the Massachusetts Bay Transportation Authority (the "MBTA Appellees") hereby state pursuant to Fed. R. App. P. 26.1 that the MBTA Appellees have no parent corporation, have issued no stock, and that no publicly-held corporation owns any such stock.

# <u>Table of Contents</u>

TABLE OF AUTHORITIES.........................................iii

JURISDICTIONAL STATEMENT......................................1

STATEMENT OF THE ISSUES.......................................1

STATEMENT OF THE CASE.........................................2

    A. The MBTA's Use Of The HRD Examination..................3

    B. Appellants Lamb And Davis.............................4

    C. The 2007 HRD Examination..............................4

    D. Expert Testimony......................................5

SUMMARY OF THE ARGUMENT.......................................7

ARGUMENT......................................................8

I.   TO SUSTAIN A TITLE VII DISPARATE IMPACT CLAIM,
    PLAINTIFFS BEAR THE BURDEN OF PROVING THAT THE
    EXAMINATION AT ISSUE HAD AN ADVERSE IMPACT ON
    MINORITY APPLICANTS.......................................9

II.  PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE DISTRICT
    COURT WAS CLEARLY ERRONEOUS IN FINDING THAT
    PLAINTIFFS FAILED TO PROVE THAT THE MBTA EXAMINATION
    HAD A DISPARATE IMPACT...................................11

    A. The Clearly-Erroneous Standard Of Review Applies
       Here Because The District Court's Decision
       Rested On Questions Of Fact...........................12

    B. Data Relating To The MBTA's 2007 HRD Examination
       Does Not Support A Finding That There Was No
       Adverse Impact From That Examination..................13

    C. The Court's Failure To Consider Aggregated Data
       Did Not Render Its Finding That The Plaintiffs Did
       Not Prove Disparate Impact As To The MBTA
       Clearly Erroneous.....................................15

1. The District Court Was Not Clearly Erroneous
   In Refusing To Aggregate Data.....................16

2. The Aggregated Data That The Plaintiffs
   Proffer, As It Applies To The MBTA, Does
   Not Support The Position That The District
   Court's Ruling Must Be Set Aside.................23

D. Evidence That Generally Minority Candidates Tend
   To Perform Less Well On Written Examinations Does
   Not Support A Conclusion That The District Court's
   Finding Was Clearly Erroneous As To The MBTA's
   2007 Examination....................................24

E. The District Court Did Not Focus Its Attention
   Solely On Bottom-Line Promotional Statistics, And
   Even If It Had, Refusing To Consider Pass Rates
   And Mean Test Scores Would Not Have Been
   Clearly Erroneous...................................26

CONCLUSION...............................................26

## TABLE OF AUTHORITIES

**Cases**

Bailey v. Se. Area Joint Apprenticeship
Comm., 561 F. Supp. 895 (N.D. W. Va. 1983).....................19

Boston Chapter, N.A.A.C.P. v. Beecher,
504 F.2d 1017 (1st Cir. 1974).........................10, 11, 25

Bradley v. City of Lynn, 443 F. Supp. 2d 145
(D. Mass. 2006).......................................10, 11, 18

Capaci v. Katz & Besthoff, Inc.,
711 F.2d 647 (5th Cir. 1983).............................18, 19

Connecticut v. Teal, 457 U.S. 440 (1982).......................13

Cumpiano v. Banco Santander P.R.,
902 F.2d 148 (1st Cir. 1990)...................................12

Easterling v. Connecticut, 783 F. Supp. 2d
323 (D. Conn. 2011)............................................19

Eldredge v. Carpenters 46 N. Cal Counties
Joint Apprenticeship & Training Comm.,
833 F.2d 1334 (9th Cir. 1984)............................18, 19

Fed. Refinance Co., Inc. v. Klock,
352 F.3d 16 (1st Cir. 2003)....................................12

Fudge v. City of Providence Fire Dept.,
766 F.2d 650 (1st Cir. 1985)........................12, 13, 23

Griggs v. Duke Power Co., 401 U.S. 424 (1971)..................13

Jones v. City of Boston, 752 F.3d 38
(1st Cir. 2014).....................................10, 13, 17

Paige v. California, 291 F.3d 1141
(9th Cir. 2002).........................................18, 19

Ricci v. DeStefano, 557 U.S. 557 (2009)....................13, 24

Case: 14-1952    Document: 105    Page: 89    Date Filed: 06/23/2015    Entry ID: 5917382

**<u>Statutes</u>**

42 U.S.C. § 2000e(m)........................................9, 10

42 U.S.C. § 2000e-2(k)(1)(A)(i)............................9, 10

M.G.L. c. 151B, § 5...........................................3

**<u>Rules</u>**

Fed R. Civ. P. 52(a).........................................12

Fed. R. App. P. 28(i).........................................9

## JURISDICTIONAL STATEMENT

In supplement to the Plaintiffs' Jurisdictional Statement, the Appellee Massachusetts Bay Transportation Authority ("MBTA") notes that the District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the matter involves a civil action arising under the laws of the United States.

## STATEMENT OF THE ISSUES

1. Whether the District Court's finding after trial in this jury-waived case that the Plaintiff MBTA patrol officer Royline Lamb failed to prove the required disparate impact with respect to the 2007 MBTA sergeant's promotional examination was clearly erroneous, where:

> a. the data that the court found was appropriate for consideration on the issue, relating to the MBTA's administration of the 2007 examination, showed no statistically-significant differences between minority officers and non-minority officers in terms of exam passing rates, promotion rates, and mean scores, and therefore did not support a disparate impact finding; and

> b. the aggregated statewide data for the exam year at issue upon which the Plaintiffs based their argument for a disparate impact finding properly

1

was rejected by the District Court consistent with the opinions of the Defendants' expert witnesses.

## **STATEMENT OF THE CASE**

Plaintiffs Royline Lamb ("Lamb") and Lynn Davis ("Davis") are minority patrol officers with the MBTA police department and have joined with other officers from jurisdictions around the Commonwealth to challenge the validity and discriminatory effect of an examination used by the Defendants to evaluate candidates for promotion to the position of police sergeant. The District Court rejected Lamb's and Davis's disparate impact claims against the MBTA because the Plaintiffs did not prove that the minority officers who applied for promotions within the MBTA's ranks suffered disparate impact as a result of the MBTA's use of a promotional examination as one component of its procedure for appointing police sergeants. In doing so, the court found as a matter of fact, after thoughtful consideration of the testimony of expert witnesses, that Plaintiffs' attempts to prove disparate impact by aggregating the test results and promotion statistics of jurisdictions statewide was inappropriate because key differences between jurisdictions in hiring and promotion decisions, training protocols, minority application rates, passing rates, and promotion rates prevented the data from being aggregated in such a way as to permit the factfinder to draw valid conclusions as to individual jurisdictions. Likewise, the

court also found that aggregation of data across examination years within jurisdictions was inappropriate here because differences exist between examination years in the substantive difficulty of the test and because this method of aggregation fails to factor out applicants who take the examination in multiple years.  These findings of fact were supported by the evidence and not clearly erroneous, and the District Court's finding that the Plaintiffs failed to prove disparate impact as to the MBTA should be affirmed.

### A.    The MBTA'S Use Of The HRD Examination

The MBTA, along with each of the other Defendant jurisdictions, utilizes an examination designed and administered by the Commonwealth's Human Resources Division ("HRD") as one component of the MBTA's procedure for selecting patrol officers for promotion to the rank of sergeant.  [RA1711].  Generally, the MBTA invites its patrol officers to take the HRD-administered examination (the "HRD Examination") at a single sitting held in odd-numbered years including 2003, 2005, and 2007.  [RA1712-13].  The HRD scores each exam and ranks the MBTA patrol officers who have achieved a passing score from highest to lowest score. [1]  [RA1712].  When sergeant vacancies arise, the MBTA requests that the HRD supply a quantity of names from the top of the ranking list equivalent to two times the number of

---

[1]    All scores 70% and above are considered passing.  [RA324].

3

vacancies plus one (known as the "2n+1" list).  [Id.].  The MBTA considers these candidates to be on equal footing and makes promotional decisions on the basis of a scored oral board process, as well as recommendations solicited from members of the MBTA's supervisory ranks.  [RA1714-16].

### B.   Appellants Lamb And Davis

Lamb and Davis are African-American patrol officers that were employed by the MBTA at all times relevant to this appeal. [RA78, 115].  Each sat for the HRD Examination in the fall of 2005.  [RA79, 115].  Neither received a passing score on that examination.  [Id.].  Lamb retook the HRD Examination in 2007, but again failed to achieve a passing mark.  [RA115].

Lamb and Davis filed discrimination charges with the Massachusetts Commission Against Discrimination ("MCAD") on September 24, 2008, well after the 300-day statute of limitations had run on claims arising out of the 2005 examination.  [Id.]; see M.G.L. c. 151B, § 5.  As such, the District Court dismissed Lamb's and Davis's claims pertaining to the 2005 examination.  [RA115].

### C.   The 2007 HRD Examination

The undisputed statistical evidence in this case provides absolutely no support for the contention that minority MBTA officers suffered adverse impact in taking the 2007 HRD Examination.  [RA4308-11].  With respect to the 2007

4

examination, the ratio at the MBTA between the passing rates of minority and non-minority officers was 0.96—meaning that minority officers passed the examination at 96-percent of the rate at which non-minority officers received passing scores. [RA4311].  Even under the EEOC's position, only ratios below 0.80 provide evidence of adverse impact.  [RA343-44]. Additionally, the mean score differential between minority and non-minority officers in 2007 was 1.8 points, a disparity that was not statistically-significant.  [RA4311].  And although the MBTA did not promote any minority officers on the basis of the 2007 HRD examination (compared with two non-minority promotions), the evidence is undisputed that because the probability of zero minority officers being promoted was greater than 5% (this probability commonly is referred to as the "p-value"), the observed difference in minority and non-minority promotion rates cannot be considered statistically-significant. [RA4311, RA311].

### D.   **Expert Testimony**

Much of the expert testimony over the eighteen-day trial of this matter concerned the aggregation of data under the unique facts of this case.  Dr. Wiesen, Plaintiffs' expert, opined that "the best approach to the aggregation is statewide within any one year."  [RA319].  Dr. Silva, one of the experts retained by the Defendants, disagreed, testifying that the aggregation of

promotional statistics across the various Defendants including
the MBTA, where each jurisdiction promoted only from among the
pool of its own existing employees, was inappropriate because
the statistical models used to calculate adverse impact ratios
assume that all candidates are eligible for all promotions.
[RA2356, 2359-60, 2494].  Where candidates only are eligible for
a small percentage of the total number of statewide open
positions, as was the case here, aggregating data across
jurisdictions causes the numbers to become distorted and leads
to unreliable conclusions.  [Id.].

Defendants' experts also rejected the aggregation of
statistical data across jurisdictions because aggregating data
of jurisdictions with differences in passing rate, promotion
rate, and/or minority application rate may result in statistical
anomalies and unreliable conclusions.  [RA2348-51, 2023-24].
Plaintiffs' expert concurred that differences between
jurisdictions in the composition of the hiring pool and in
passing and promotion rates could lead to distorted data and
unreliable conclusions when considered in the aggregate.  [RA
737-38, 741-42].

Dr. Outtz, an expert retained by the Defendants, opined
that aggregating data across examination administrations, within
jurisdictions, also could jeopardize the reliability of the data
because aggregation of data in such a way fails to factor out

6

individuals who take the examination multiple times over different exams.  [RA2025].  Dr. Wiesen acknowledged this "double-counting" flaw, and also noted that comparing different examination administrations may be problematic in that some administrations likely will be considered more substantively difficult than others, leading to lower mean scores across the board in certain years.  [RA318-19].

Both the District Court and Dr. Silva acknowledged problems with the aggregation of mean test score differentials across jurisdictions.  For starters, the court found that judging adverse impact only on the basis of mean test score differentials fails to take into account differences between jurisdictions in initial hiring decisions and subsequent officer training that may explain the reason for the differences between the examination performances of minority and non-minority officers. [RA106].  Dr. Silva considered ratios measuring differences in promotions more significant than mean test score differentials because the aim is to receive a promotion, not simply to score more highly on an exam.  [RA2435].

## SUMMARY OF THE ARGUMENT

The District Court's judgment in favor of the MBTA on Davis's and Lamb's disparate impact claims should be affirmed. The Plaintiffs failed to adduce any evidence that there was a statistically-significant adverse impact on minority officer

7

test-takers resulting from the 2007 MBTA examination.  That
finding, and the Court's finding that the aggregation of test
and promotional data across jurisdictions, or across test
administrations, was inappropriate, were not clear error.

## ARGUMENT

As indicated, with respect to the MBTA, this case involves
two Plaintiffs, Davis and Lamb.  Both participated in the HRD-
sponsored sergeant's exam in 2005, and neither passed.  Lamb
also took the sergeant's exam in 2007, and again did not pass.
Because neither Davis nor Lamb filed timely discrimination
charges with the MCAD regarding the 2005 examination, the
District Court dismissed Davis's claim and Lamb's claim insofar
as it was based on the 2005 exam.  [RA115].  The Plaintiffs have
not argued in this appeal that those dismissals were erroneous.
As a result, the sole claim against the MBTA is Lamb's claim
arising out of the 2007 examination.

The District Court's decision that Lamb did not prove the
existence of disparate impact in the MBTA's 2007 examination and
promotional process is not clearly erroneous, and the resulting
judgment in favor of the MBTA therefore should be affirmed.  The
data relating to the MBTA's use of the 2007 HRD Examination does
not show any statistically-significant differences between
minority and non-minority applicants and therefore, all parties

agree, cannot support a finding of disparate impact.[2]  Lamb seeks

to add to the MBTA test data, so-called "aggregated data," viz.

statewide examination results for other jurisdictions for the

same examination year.  The District Court rejected this

aggregation on the facts and based upon witness testimony.  That

finding was not clearly erroneous, and therefore the court's

finding of no showing of disparate impact must stand.

The MBTA expressly incorporates by references the arguments

made by the City of Boston and the other Defendants/Appellants

as to the validity of the HRD Examination.  See Fed. R. App. P.

28(i).

**I.    TO SUSTAIN A TITLE VII DISPARATE IMPACT CLAIM, PLAINTIFFS
BEAR THE BURDEN OF PROVING THAT THE EXAMINATION AT ISSUE
HAD AN ADVERSE IMPACT ON MINORITY APPLICANTS.**

The Plaintiff officers argue in their brief that their

burden of proving that the examinations they challenge had a

disparate impact on minority applicants is "presumptively low"

or "modest."  Plaintiffs-Appellants' Brief, at 72, 76.  This

position is not supported by the law.  Under Title VII, as

amended by the Civil Rights Act of 1991 ("Title VII"), employers

are prohibited from engaging in any conduct that has "a

disparate impact on the basis of race, color, religion, sex, or

national origin" unless the conduct is justified by a business

---

[2]    The MBTA notes that the adverse impact ratio for passing
rates for the 2007 MBTA test was 0.96, meaning that minorities
passed the test at nearly the same rate as non-minorities.

necessity.  42 U.S.C. § 2000e-2(k)(1)(A)(i).  Title VII
expressly places on plaintiffs the burden of proving that the
challenged conduct has a disparate impact on the basis of race.
Id.  The statute provides that "[a]n unlawful employment
practice based on disparate impact is established under this
subchapter only if (i) a complaining party demonstrates that a
respondent uses a particular employment practice that causes a
disparate impact on the basis of race . . . ."  Id. (emphasis
added).  The word "demonstrates" is defined in the statute as
"meets the burdens of production and persuasion."  42 U.S.C. §
2000e(m); Bradley v. City of Lynn, 443 F. Supp. 2d 145, 156 (D.
Mass. 2006).  Only after the plaintiff proves disparate impact
does the statutory scheme call for the burden to shift to the
defendant to prove by way of affirmative defense that the
practice in question constitutes a business necessity.  Jones v.
City of Boston, 752 F.3d 38, 54 (1st Cir. 2014).

The plaintiffs rely upon the case of Boston Chapter,
N.A.A.C.P., Inc. v. Beecher, 504 F.2d 1017, 1019-21 (1st Cir.
1974), where this Court noted that an "unrealistically high
threshold burden" should not be placed on plaintiffs in a
disparate impact case where plaintiffs lack access to the
relevant data needed to prove their case and there is
overwhelming historical evidence of discrimination in the field.
504 F.2d at 1020-21.  But the Beecher case does not hold or

10

support the position that the Plaintiffs argue here, i.e. that a
plaintiff in a disparate impact case was relieved, at least to
some degree, of the burden of proving that the challenged
employment practice resulted in a disparate impact.  It also
should be noted that the relevant statutory language, quoted
above, that requires that the plaintiff meet the burden of
persuasion on the issue of disparate impact was added to the
statute with the enactment of the Civil Rights Act of 1991, 105
stat. 1071, seventeen years after the decision in <u>Beecher</u>.

## II.  PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE DISTRICT COURT WAS CLEARLY ERRONEOUS IN FINDING THAT PLAINTIFFS FAILED TO PROVE THAT THE MBTA EXAMINATION HAD A DISPARATE IMPACT.

The District Court was not clearly erroneous in finding,
after due consideration of the testimony of four expert
witnesses, that the Plaintiffs failed to prove the necessary
disparate impact as to the MBTA's use of the 2007 HRD
Examination.  Plaintiffs did not, and could not, prove disparate
impact against the MBTA on the basis of the <u>MBTA's</u> promotional
statistics because it is undisputed that none of that data
demonstrates a statistically-significant difference between
minority and non-minority officers in passing rate, promotion
rate, or mean test score.  Furthermore, the court found that the
aggregation of data across jurisdictions and time was not
warranted on the facts of this case.  Given the evidence, the
District Court's finding that Plaintiffs failed to prove

disparate impact against the MBTA was not clearly erroneous and should be affirmed.

### A. The Clearly-Erroneous Standard Of Review Applies Here Because The District Court's Decision Rested On Questions Of Fact.

The District Court's decision was premised on findings of fact made after consideration of the trial testimony of four expert witnesses. It therefore is entitled to substantial deference on appeal. "In all actions tried upon the facts without a jury . . . [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed. R. Civ. P. 52(a); Fed. Refinance Co., Inc. v. Klock, 352 F.3d 16, 26-27 (1st Cir. 2003) ("A party who challenges a district court's findings of fact, arrived at after a bench trial, faces a steep uphill climb."); Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990). This deferential standard of review applies in full force to a district court's assessment of statistical data in the context of a plaintiff's disparate impact claim. See Fudge v. City of Providence Fire Dept., 766 F.2d 650, 658 (1st Cir. 1985) (applying clear error standard to review of district court's findings with respect to alleged disparate impact caused by written hiring examination).

B.   Data Relating To The MBTA's 2007 HRD Examination Does Not Support A Finding That There Was No Adverse Impact From That Examination.

The disparate impact provision of Title VII prevents employers from maintaining facially-neutral practices that are "fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971).  As such, cases based on a theory of disparate impact often involve more subtle forms of discrimination than what typically is alleged in disparate treatment cases.  See Connecticut v. Teal, 457 U.S. 440, 456 (1982) (acknowledging subtle nature of typical disparate impact claim).  While disparate impact claims proceed without proof of disparate treatment, courts in disparate impact cases have required that plaintiffs, as part of their prima facie case, adduce statistically-significant proof that the challenged practice has had an adverse effect on a protected group.  Ricci v. DeStefano, 557 U.S. 557, 587 (2009) (acknowledging that prima facie case for disparate impact requires proof of "significant statistical disparity"); Jones, 752 F.3d at 53 (noting the "need to show statistical significance" in disparate impact cases); Fudge, 766 F.2d at 658 (plaintiffs did not make prima facie showing of disparate impact because they failed to introduce statistically-significant data demonstrating that fire department hiring examination had adverse impact on minority applicants).

Plaintiffs here did not proffer evidence that there was a statistically-significant adverse impact resulting from the 2007 MBTA examination.  None of the data pertaining to the MBTA examination, for promotion rates, passing rates, effective passing rates, and average test score, showed a statistically-significant disparity between non-minorities and minorities. (See the charts prepared by Plaintiffs' expert at RA4311 and RA4319).

Indeed, if the data from the MBTA examination suggests anything, it is that the MBTA examination was fair to the minority officers who participated in the promotion process. Two of the four minorities and fourteen of the twenty-seven non-minorities who took the 2007 MBTA examination passed it, for a difference in passing rate of 0.96 (meaning that the passing rate of minorities was 96% of the passing rate of minorities).[3] [RA4311].  The EEOC Guidelines, and a rule of thumb used by statisticians, provide that only differences in rates below 0.80 indicate an adverse impact.  [RA343-44].  In addition, the differential in mean scores between minorities and non-minorities on the MBTA's 2007 examination was a mere 1.8 points out of the 100 point total on the test (i.e. a 1.8% difference). [RA4311].  In the absence of any evidence of statistically-

---

[3]    Neither of the two minority officers who passed the examination was promoted into the two available sergeant positions.  [RA4311].

14

significant differences between minority and non-minority
officers in passing rate, promotion rate, or mean test scores on
the 2007 MBTA exam, the District Court was not clearly erroneous
in finding that Plaintiffs failed to prove disparate impact as
to the MBTA.

    C.    <u>The Court's Failure To Consider Aggregated Data Did
Not Render Its Finding That The Plaintiffs Did Not
Prove Disparate Impact As To The MBTA Clearly
Erroneous</u>.

Plaintiffs argue that the Court erred in failing to
aggregate data in considering whether there was a disparate
impact resulting from the MBTA's examination.  The MBTA joins
with the other non-Boston defendants in rejecting that position.
There was ample evidence on the record for the court to conclude
that aggregation of data across jurisdictions was inappropriate
here where each jurisdiction only promoted its own employees and
differences existed between jurisdictions in minority
application rate, passing rate, promotion rate, initial hiring
procedures, and training regimens.  The Court also was entitled
to rely on expert testimony that data could not be aggregated
across examination years within jurisdictions because such
methodology does not factor out individuals who take the HRD
Examination multiple times and fails to account for differences
between examinations in substantive difficulty.

Furthermore, even if this Court rules that aggregated data should have been considered, the judgment in favor of the MBTA still should be affirmed.  The aggregated data that the Plaintiffs press the court to consider, statewide results separately for each examination year, does not assist the Plaintiffs in their claim against the MBTA.  The only year at issue is the claim as to the 2007 examination.  And, by the evidence of the Plaintiffs' own expert, statewide data from the 2007 examination is not sufficient to render the District Court's finding clearly erroneous because the statewide data the District Court would have found most probative, the pass/fail ratio of minority officers to non-minority officers, showed no evidence of adverse impact.

1.    The District Court Was Not Clearly Erroneous In Refusing To Aggregate Data.

The Plaintiffs argue that the statistical data introduced at trial, when considered in the aggregate, required the District Court to find as a matter of fact that the Plaintiffs made out a prima facie disparate impact case.  The court rejected this position on the ground that, as a matter of fact, it would be an inappropriate application of statistical principles to aggregate data across jurisdictions.  [RA106-08].  It found that the aggregation of data across jurisdictions causes statistically-anomalous results where, as here, each

16

candidate is eligible for promotion only within the candidate's jurisdiction and where there are differences in each jurisdiction's passing/promotion rate, minority application rate, and hiring and training procedures.  [Id.].  The court also reasonably found that data may not be aggregated within jurisdictions across examination years because such methodology does not factor out individuals who take the examination multiple times and fails to consider differences in substantive difficulty between examinations.  [RA107-08].  These findings were made after listening to and weighing the credibility of competing expert witnesses over many days of trial testimony, and after acknowledgment that aggregation of statistics is appropriate in some cases with facts unlike those here.[4] [RA106].

---

[4]    Plaintiffs argue that courts should aggregate statistical data across jurisdictions in order to obtain a large enough sample size to allow for statistically-significant results against small jurisdictions.  This argument is inconsistent with this Court's recent Jones decision.  In Jones, a disparate impact case in which the plaintiffs alleged that drug-testing procedures had an adverse impact on minority officers, this Court noted with approval that the requirement of statistically-significant data "eliminate[s] small impacts as fodder for litigation."  752 F.3d at 53.    To hold that Plaintiffs here can require the MBTA to provide proof of business necessity on such a trifling showing of adverse impact runs counter to both the letter and the spirit of Jones.  Without proof of statistically-significant data tending to support an inference of adverse impact, the Plaintiffs have failed to make out a prima facie disparate impact case, and the District Court's entry of judgment in favor of the MBTA must be affirmed.

Whether to aggregate data as a means of assessing adverse impact is a fact-driven issue to be resolved by the trial court on a case-by-case basis.  The cases cited by the Plaintiffs in support of their contention that the trial court clearly erred in refusing to aggregate data here stand only for the proposition that aggregation of data is appropriate under some circumstances.  See, e.g., Bradley, 443 F. Supp. 2d at 157.  In none of these cases, however, did the court hold that aggregation of data was required.  Rather, the cases cited by the Plaintiffs represent either a district court's finding in the first instance that aggregation was appropriate under the facts of that particular case, or else a court of appeals' ruling that the district court was permitted to rely on statistical aggregation in assessing disparate impact.  See, e.g., Paige v. California, 291 F.3d 1141, 1148-49 (9th Cir. 2002); Capaci v. Katz & Besthoff, Inc., 711 F.2d 647, 656 (5th Cir. 1983); Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm., 833 F.2d 1334, 1339 (9th Cir. 1984).

In exercising the discretion to aggregate data (or not), courts often draw a distinction between cases where the aggregated data at issue is derived from the same employer and cases where the data comes from entities making employment decisions independently of one another (even if the entities

18

each use the same selection mechanism).  Most of the cases the
Plaintiffs rely on in support of their argument that the
District Court should have aggregated statistics across
jurisdictions involved a court's use of discretion to aggregate
data points derived from within the same employing unit.  See,
e.g., Paige, 291 F.3d at 1148-49 (aggregation of data across
examination administrations acceptable within California Highway
Patrol); Capaci, 711 F.2d at 656 (drug store's hiring data could
be aggregated where all hiring decisions made within single
office of company); Eldredge, 833 F.2d at 1339 (district court
could aggregate data for admission into trade apprenticeship
over nine-year period).  Where, on the other hand, multiple
employers use the same screening mechanism for purposes of
independently making employment decisions, aggregation has been
found not to be appropriate.  See Easterling v. Connecticut, 783
F. Supp. 2d 323, 334-35 (D. Conn. 2011) (court refused to
aggregate data across three state agencies using the same hiring
test because agencies each made hiring decisions independently
of one another); Bailey v. Se. Area Joint Apprenticeship Comm.,
561 F. Supp. 895, 910 (N.D. W. Va. 1983) (declaring aggregation
inappropriate across jurisdictions where each jurisdiction
implemented hiring standards autonomously).

Dr. Silva, one of the Defendants' experts, explained why
courts often are reluctant to aggregate statistics across

jurisdictions with different hiring pools and selection criteria.  He testified that the statistical models used to calculate adverse impact ratios assume that all candidates are eligible for all promotions.  [RA2356, 2359-60, 2494]. Therefore, in circumstances where candidates only are eligible for a small percentage of the total number of open positions statewide, as is the case here, aggregating data across jurisdictions causes the data to become distorted and leads to unreliable conclusions.  [Id.].  Dr. Silva therefore was of the opinion that passing and promotion rates should not be combined across jurisdictions under the facts of this case.  [Id.].

Further support for the conclusion that aggregation of data across jurisdictions was inappropriate in this case was provided by the testimony of both of Defendants' experts that aggregating the data of jurisdictions with variances in promotion rates, passing rates, and/or minority application rates can cause false positive conclusions as to the existence of adverse impact. [RA2348-51, 2023-24].  Dr. Wiesen, Plaintiffs' expert, also acknowledged the possibility that data could be corrupted by aggregating across jurisdictions with differences in minority application, promotion, and passing rates.  [RA737-38, 741-42].

The Plaintiffs argue that aggregating mean score differentials (as distinguished from promotion rates and passing rates) can be an effective indicator of adverse impact because

20

the practice is unaffected by differences between municipalities in promotion rates and minority application rates. This argument, however, fails to take into account differences between jurisdictions in initial hiring decisions and training programs, factors that may explain why minority officers in some jurisdictions perform better on promotional examinations than minority officers in other jurisdictions. [RA106]. Dr. Silva also questioned the utility of studying mean score differentials under the facts of this case because, as a practical matter, it is rare for individuals who score at or around the mean to receive promotions. [RA2437-38]. With very few promotion opportunities available, generally only the highest-scoring candidates are promoted. [Id.].

Finally, Plaintiffs' argument that data should have been aggregated across examination years within individual jurisdictions fails for two reasons. First, both Plaintiffs' and Defendants' experts agreed that this methodology is flawed. Dr. Outtz, testifying for the Defendants, opined that aggregating data in such a way was inappropriate because it fails to take into account repeat examination takers. [RA2025]. That is, aggregating across examination administrations risks counting the same minority applicants multiple times, thereby exaggerating the statistical measure of adverse impact within the jurisdiction over time. [Id.] Dr. Wiesen acknowledged this

21

"double-counting" flaw, and also noted that comparing different examination administrations may be problematic in that some administrations likely will be considered more substantively difficult than others, leading to lower mean scores across the board in certain years.  [RA318-19].  And second, even if the District Court erred in refusing to aggregate data within jurisdictions, the error would be harmless as to the MBTA because the data aggregated over the 2003, 2005, and 2007 MBTA examinations still would be not statistically-significant, and therefore, could not support a finding of adverse impact against the MBTA.  [RA4310].

Based on the expert testimony described above, the District Court had more than sufficient evidentiary support to reject each of the aggregation methodologies the Plaintiffs proposed in this case.  The court made express findings as to the flaws inherent in aggregating statistics where, as is true here, each jurisdiction may only hire from within the pool of its own employees; jurisdictions have differences in passing rates, selection rates, numbers of minority applicants, initial hiring policies, and training programs; aggregation methodology does not factor out applicants taking the HRD examination in multiple years, and examination administrations vary in terms of substantive difficulty.  The court, after listening to the testimony of experts who had reached contrary conclusions, was

22

persuaded that Defendants' experts correctly challenged the
propriety of aggregating the data of the very different
Defendant jurisdictions in this case.  As such, the court's
decision against aggregating data was not clearly erroneous and
should be affirmed.

> 2.  The Aggregated Data That The Plaintiffs Proffer,
>     As It Applies To The MBTA, Does Not Support The
>     Position That The District Court's Ruling Must Be
>     Set Aside.

In their brief, the Plaintiffs argue, quoting their
statistical expert, that "the best approach to the aggregation
is statewide within any one year" because this approach
eliminates the concern that individual administrations of the
HRD examination are too different to permit the effective
aggregation of data.  [Id.]; see Fudge, 766 F.2d at 656-57
(finding aggregating of data across examination years
inappropriate where examinations varied significantly year-to-
year).  Even if the Plaintiffs are correct that aggregation of
this data should have been considered by the District Court,
this approach does not provide a basis for vacating the District
Court's finding that the Plaintiffs failed to prove adverse
impact against the MBTA because the statewide data pertaining to
pass/fail rate, the statistic the District Court found to be
most probative on the issue of adverse impact, for 2007, the
only year at issue for the MBTA, provided no proof of adverse

impact.[5]  [RA115, 4307].  As such, even if the court had
considered aggregated data for the 2007 examination, it still
would not have found adverse impact as to the MBTA.

> D.     Evidence That Generally Minority Candidates Tend To
>        Perform Less Well On Written Examinations Does Not
>        Support A Conclusion That The District Court's Finding
>        Was Clearly Erroneous As To The MBTA's 2007
>        Examination.

The Plaintiffs appear to contend that the District Court
was required to find adverse impact as to all the examinations
at issue in this case solely on the basis of expert testimony
that in general minority officers tend to perform less well on
written examinations than non-minority officers.  Even if this
generally were true, it does not follow from it that on any
particular test minority test-takers will not perform as well as
non-minorities.  This absence of any connection between a
supposed general rule and any particular test is undoubtedly why
courts, including the United States Supreme Court, have required
statistical evidence with respect to a particular employment
action.  See Ricci, 557 U.S. at 570-72 (recounting undisputed
expert testimony that white test-takers generally outperform

---

[5]     The data on statewide promotion rates for 2007 was not
statistically-significant.  [RA4307].  In terms of mean test
scores, the data showed a statistically-significant differential
of 4.5 points between minority and non-minority applicants.
[RA4319].  As noted above, however, the District Court found the
evidence on passing rates most relevant to the claims against
the MBTA.  [RA115].

minorities on written tests, but still considering statistical evidence of adverse impact).

This Court's decision in <u>Beecher</u>, relied upon by the Plaintiffs, does not support their position here.  The <u>Beecher</u> court held only that the district court was not <u>clearly erroneous</u> in finding that expert testimony as to minority applicants' disproportionately high failure rate, coupled with strong evidence of pervasive and historic discrimination in the hiring of minority fire fighters across the Commonwealth in the late 1960s and early 1970s, was sufficient for the plaintiffs in that case to establish a prima facie case.  504 F.2d at 1019-21. The court did not hold that such a finding was required by the evidence.  <u>Id.</u>

Nor is such a ruling warranted here.  The District Court specifically acknowledged the expert testimony that minorities tend to perform less well than non-minorities on written exams. [RA102].  But the court, in finding no disparate impact, obviously concluded that it was not alone dispositive in this case.  Furthermore, the Plaintiffs' argument on this point relied heavily on the statistics for the Boston examinations. Plaintiffs-Appellants' Brief, at 77.  The Boston examinations are not relevant to the claim against the MBTA, however, because Boston did not hold exams in 2007, which is the only examination year relevant to the claims against the MBTA.

25

     **E.**    <u>The District Court Did Not Focus Its Attention Solely On Bottom-Line Promotional Statistics, And Even If It Had, Refusing To Consider Pass Rates And Mean Test Scores Would Not Have Been Clearly Erroneous</u>.

The Plaintiffs are incorrect in stating that the District Court's analysis considered only "bottom-line promotion statistics," at least as to the MBTA.  Noting that the two MBTA officer Plaintiffs failed to pass the examinations, the District Court considered the adverse impact ratio between minorities and non-minorities in terms of passing rates for the MBTA's 2005 and 2007 examinations, not promotion rates.  [RA115].  Additionally, reliance on mean test score differentials in assessing adverse impact at the MBTA would not have resulted in a different conclusion as to disparate impact because the evidence was undisputed that the MBTA's data showed no statistically-significant difference in test scores between minority and non-minority officers.

<u>**CONCLUSION**</u>

For the reasons stated above, the District Court's order in favor of the MBTA should be affirmed.

Respectfully submitted,

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY, DANIEL GRABAUSKAS, in his
capacity as General Manager, and
BOARD OF TRUSTEES OF THE
MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY

/s/ James F. Kavanaugh, Jr.
/s/ Christopher K. Sweeney
James F. Kavanaugh, Jr. (C.A.B. 39984)
Christopher K. Sweeney (C.A.B. 1158298)
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
617-482-8200
jkavanaugh@connkavanaugh.com
csweeney@connkavanaugh.com

Dated:  June 23, 2015

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Fed.
R. App. P. 32(a)(7) because it contains less than 30 pages and
14,000 words, excluding the parts of the brief exempted by Fed.
R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed.
R. App. P. 32(a)(5) and the type style requirements of Fed. R.
App. P. 32(a)(6) because it has been prepared in a monospaced
typeface using 12-point Courier New font and contains less than
10.5 characters per inch.


                         /s/ Christopher K. Sweeney


June 23, 2015

## Certificate of Service

I hereby certify that on June 23, 2015, I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the appellate CM/ECF system. I certify that the following parties or their counsel are registered as ECF filers and that they will be served by the CM/ECF system:

Harold L. Lichten
Benjamin Weber
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
617-994-5800

Kay H. Hodge
John M. Simon
Stoneman, Chandler & Miller, LLP
99 High Street
Boston, MA 02110
617-542-6789

Lisa Skehill Maki
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

Robert P. Morris
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA 02109

Maurice Martin Cahillane
Egan, Flanagan & Cohen PC
67 Market Street
Springfield, MA 01102

Charles Boddy
City Attorney
City of Lawrence
200 Common Street
Lawrence, MA 01840
(978) 620-3030

Iraida J. Alvarez
Robert Lawrence Quinan, Jr.
Sookyoung Shin
MA Attorney General's Office
1 Ashburton Place, 20th Floor
Boston, MA 02210

Rachel M. Brown
Shapiro Haber & Urmy, LLP
2 Seaport Ln.
Boston, MA 02210

Christine Patricia O'Connor
City of Lowell
375 Merrimack Street
Lowell, MA 01852

Kerry R. Jenness
City of Methuen
Officer of the City Solicitor
41 Pleasant Street, Suite 311
Methuen, MA 01844
978-983-8576

Edward M. Pikula
John Thomas Liebel
Anthony I. Wilson
City of Springfield Law Department
36 Court Street, Room 210
Springfield, MA 01103
413-787-6085

Daniel C. Brown
Tim D. Norris
Joshua Ryan Coleman
Collins Loughran & Peloquin, P.C.
320 Norwood Park
Norwood, MA 02062
781-762-2229

Lawrence J. Donoghue
Law Office of Corinne Hood Greene
One Thompson Square, Suite 502
Charlestown, MA 02129

/s/ Christopher K. Sweeney