# LICHTEN & LISS-RIORDAN, P.C.

ATTORNEYS AT LAW

729 BOYLSTON STREET, SUITE 2000
BOSTON, MASSACHUSETTS 02116

HAROLD L. LICHTEN†
SHANNON LISS-RIORDAN◊

BENJAMIN J. WEBER▫
PETER M. DELANO
MATTHEW W. THOMSON
JILL S. KAHN◊
ADELAIDE H. PAGANO
THOMAS P. FOWLER◊

TELEPHONE 617-994-5800
FACSIMILE 617-994-5801

WWW.LLRLAW.COM

†ALSO ADMITTED IN MAINE
◊ALSO ADMITTED IN NEW YORK
▫ALSO ADMITTED IN TENNESSEE

October 15, 2015

**VIA ECF**

Chambers of Judges Juan R. Tourella, Sandra L. Lynch, and William J. Kayatta, Jr.
United States First Circuit Court of Appeals
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 2500
Boston, MA 02210

    Re:    <u>Pedro Lopez, et al. v. City of Lawrence, et al.</u>
              No. 14-1952

Dear Judges Tourella, Lynch, and Kayatta:

    At oral argument on October 7, Judge Kayatta asked if, by crediting the testimony of Dr. James Outtz, the District Court had made the required finding that the 2005 and 2008 police sergeant promotional exams were valid as rank-order devices. Dr. James Outtz's testimony on this point on direct examination was as follows:

    Q.    And after reviewing those documents, did you ultimately come to an opinion as to whether the examinations administered by the HRD were valid?

    A.    Yes.

    Q.    And what is that opinion?

    A.    I reached the conclusion that the examination process with the written test and the assessment of education and experience, that combination constituted a valid process.

    Q.    And did you -- upon reaching that conclusion did you consider whether or not the exams at issue complied with the requirements of the Uniform Guidelines?

    A.    I did.

    Q.    And what did you determine?

LICHTEN & LISS-RIORDAN, P.C.

    A.    I determined that they did, and in my opinion do, comply with the Uniform Guidelines.

Record Appendix at 1880-81. On cross-examination, Dr. Outtz was asked about an Amicus brief he and other experts submitted in the Ricci case and testified as follws:

    Q.    Principle number 4 of the brief, the section 4 was the New Haven fire tests could not have been validated for strict rank-ordering of candidates. Do you see that?

    A.    Yes.

    Q.    And you say, "Under accepted standards, not only must an exam's content be properly validated, but the use of the scores must be scientifically justified." Do you see that?

    A.    Yes.

    Q.    As you say -- the brief goes on to say the Uniform Guidelines state, "The use of a selection procedure on a pass/fail screening basis may be insufficient to support the use of the same procedure on a ranking basis under these guidelines." Is that correct?

    A.    Yes.

    Q.    And then you -- the brief goes on to say that because they were using that test as a rank order device, it was not valid because you could not justify small differences in scores as producing the better candidate; is that right?

    A.    Particularly given the flaws in that test.

Record Appendix at 2245. Furthermore, on cross-examination, Dr. Outtz testified:

    Q.    Okay. So let me see if I can explore that for a minute. So you can have a test that is valid generally, but that may not make it valid for use as a strict rank ordering device; is that correct?

    A.    That is true. That's stipulated in the guidelines.

    Q.    Okay. For instance, a test could be valid at the passing point, it could meet validity requirements, but that doesn't make it valid when used as a strict rank ordering device if there -- if used as a strict rank ordering device, the top score and the score after that doesn't necessarily predict who the best candidate would be; is that right?

    A.    Not quite. They do predict but not -- maybe not at the level of specificity that this strict rank ordering dictates. So that if you have a test that's valid – it's valid to

L I C H T E N  &  L I S S - R I O R D A N ,  P. C.

> some degree. You can use it in different ways, and the ways that you use it may or may not be appropriate given its level of validity, is the way I would put that.
>
> Q. And that, again, ties back to the concept of reliability, correct? That you cannot use it as a strict rank ordering device, it would not be valid if the reliability does not permit you scientifically to make the assumption that the highest score will do the best on the job?
>
> A. That's partially correct. You can use it as a ranking device; in other words, according to the Uniform Guidelines, if it's valid you can use it in a number of ways, and you can use it as a ranking device if you have specific information to justify the kind of ranking that you're doing. If you're talking about strict rank ordering; that is, any difference in the scores is treated as meaningful, that's one kind of ranking. You can have bands, Bands A, B and C, and that's another form of ranking; pass/fail is a form of ranking, basically. So that you can different forms of ranking, and the strict rank ordering may not be the best way to use this test or as valid or even meet minimal validity depending upon what the test is. So that's the way I would put that.

Record Appendix at 2138-39.

At no time did Dr. Outtz testify that the exams were valid for use as rank order devices.

Furthermore, in response to Department of Justice Attorney Bonnie Robin-Vergeer's argument that there was no support for a finding that the Education and Experience component of the exam measured supervisory ability because Dr. Outtz never testified that it did, Judge Kayatta disagreed, stating "Page 1971 -- the exam tests enough supervisory skills to be valid."

Dr. Outtz' testimony on Page 1971 was as follows:

> Q. And can you tell me, in the review of the materials that you have performed here do you have an opinion as to whether or not the examinations at issue test enough of the supervisory skills to meet validity requirements?
>
> A. The examinations here test enough of the KSAs that were identified in the job analysis to satisfy the requirements for content validity.

Record Appendix 1971. Dr. Outtz later testified as follows:

> Q. In your opinion does the education and experience piece or component of this examination add to the validity of the exams that you reviewed?
>
> A. It does. The education and experience rating, in my opinion, is what makes this package, in my opinion, meet the Uniform Guidelines. It expands the number of KSAs being measured to over 50 percent of the KSAs that were identified as being important to the job.

3

# LICHTEN & LISS-RIORDAN, P.C.

> So that in this education and experience component, in terms of the validity issue, to me is very important in that it does, in fact, expand -- which is what content validity is about. It expands the proportion of KSAs being measured by this selection system, and it is the proportion of KSAs that are being measured that goes to the heart of the requirement of the Uniform Guidelines in terms of content validity, which is the form of validation that was used in this case.

Record Appendix 1892.

Dr. Outtz did not testify on Page 1971, or on any other page, that the Education and Experience component tested for supervisory ability.

          Respectfully submitted,

          <u>/s/ *Harold Lichten*</u>
          Harold Lichten

cc:    Iraida J. Alvarez
       Gina Marie Atwood
       Daniel C. Brown
       Maurice Martin Cahillane
       Harry P. Carroll
       Stephen S. Churchill
       William G. Cullinane
       Richard J. D'Agostino
       John Thomas Liebel
       Lisa Skehill Maki
       Kevin Sean McDermott
       Robert P. Morris
       Tim D. Norris
       Christine Patricia O'Connor
       Edward M. Pikula
       Robert Lawrence Quinan Jr.
       Mark Daniel Selwyn
       Susan M. Weise
       Charles Boddy
       Kay Hodge
       Christopher K. Sweeney
       Rachel M. Brown
       Kerry R. Jenness